3 P.3d 1158

**Debbie STOUT, individually, and on behalf of Logan Stout and the Estate of Todd Stout, and Ray Stout[1] and Pat Stout, Plaintiffs, Counterdefendants–Appellants,**

v.

**STATE COMPENSATION FUND, Defendant, Counterclaimant–Appellee.**

**No. 1 CA–CV 98–0652.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 8, 2000.

---

1. We note that although Ray Stout, the decedent's father, has been included in the appeal's caption, no appeal has been brought on his behalf.

The Langerman Law Offices, P.A. by Richard W. Langerman and Amy G. Langerman, Phoenix, for Appellants.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg and Mark G. Worischeck, Phoenix, for Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 This appeal presents several issues relating to the lien rights of a workers' compensation carrier. Specifically, we are asked to decide whether equitable apportionment applies when a third-party claim is settled, what is encompassed in the carrier's duty of good faith and fair dealing when it is asked to approve a settlement with a third-party tortfeasor, to what extent recoveries by family members of the deceased worker are subject to the carrier's lien, and whether a lien offset against a loss of consortium award is unconstitutional. As discussed below, we affirm the trial court's rulings on these issues in favor of the carrier except for the ruling that the lien attaches to recoveries by family members who did not receive any compensation benefits.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On June 7, 1994, Todd Stout was severely injured in an accident at Fireworks Productions International, Inc. (FPI), where he was employed. Mr. Stout filed for and received workers' compensation benefits paid by the State Compensation Fund (the Fund). On August 22, 1994, he died of complications from medical care necessary to treat his work-related injuries. The Fund paid approximately $696,632.93 in compensation to or on behalf of Mr. Stout and paid additional benefits to his wife, Debbie Stout, after his death; the amounts paid totaled approximately $725,000. The Fund claimed a lien for the amount of workers' compensation paid to Todd, Debbie, and for their son, Logan Stout.

¶ 3 Debbie Stout, on behalf of herself and Logan, Mr. Stout's mother, Pat Stout, and Todd Stout's estate (the Stouts) sued a product manufacturer, Luna Tech, Inc., seeking

recovery for medical expenses, wrongful death, and loss of consortium. Luna Tech's insurer offered to pay the policy limits of $1,000,000 to settle all claims against Luna Tech. The settlement required consent of the Fund. The Fund was willing to approve the proposed settlement if it was paid a reduced amount of $245,000 for its lien recovery and given a full future credit. The Stouts offered to pay the Fund $100,000 with no future credit. They took the position that the Fund's lien should be significantly reduced due to employer fault for Mr. Stout's injuries.[2] The Fund and the Stouts were unable to reach an agreement.

¶ 4 The Stouts filed the declaratory judgment action that is the subject of this appeal. In the action, the Stouts sought a declaration that the Fund's consent was not required to settle their lawsuit against Luna Tech and a determination of the amount of the Fund's lien against any settlement proceeds.

¶ 5 After considering motions for partial summary judgment filed by the parties, the trial court ruled that under Ariz.Rev.Stat. Ann. (A.R.S.) § 23–1023(C), any settlement of the third-party claim must be approved by the Fund. The court further decided that an offset against the Fund's lien for employer liability as allowed under *Aitken v. Industrial Commission*, 183 Ariz. 387, 904 P.2d 456 (1995), does not apply to settlements because no procedure to determine an equitable apportionment exists except for a trial that goes to a verdict. Finally, the court ruled that under *Martinez v. Industrial Commission*, 168 Ariz. 307, 812 P.2d 1125 (App.1991), the Fund's lien applied to amounts recovered for loss of consortium.

¶ 6 In response to a motion for clarification filed by the Stouts, the court stated that whether the lien could or should be paid from beneficiaries who did not receive any direct benefits from the Fund must be decided by the appellate court. However, it interpreted *Martinez*'s silence on the issue to mean that the lien must be paid first and then remaining proceeds, if any, would be paid to the

beneficiaries. The Stouts appealed from the judgment in favor of the Fund.

## DISCUSSION

### A. Equitable Apportionment

¶ 7 For their first issue on appeal, the Stouts argue that the rule of equitable apportionment from *Aitken* should apply to cases that are resolved by settlement. They maintain that this rule is not dependent on the resolution of the third-party claim by a verdict because under the policy considerations set forth in *Aitken*, if A.R.S. § 23–1023(C) requires an equitable apportionment to accomplish the goals of the workers' compensation system, then the rule must be applied in all cases and to all compensation liens, even if a third-party claim to which a lien applies is settled.

¶ 8 To consider the Stouts' arguments, we first examine *Aitken*. There, Aitken was injured on the job and received workers' compensation benefits. *See* 183 Ariz. at 388, 904 P.2d at 457. She sued a third party, which named her employer a nonparty at fault. *See id.* at 388–89, 904 P.2d at 457–58. The jury apportioned 25% of the liability for Aitken's injuries against her employer. *See id.* at 389, 904 P.2d at 458. She had to reimburse her employer's workers' compensation carrier for the benefits she had already received, and the carrier claimed a lien credit against future compensation of the amount remaining from the recovery after deductions for attorneys' fees and costs. *See id.*

¶ 9 Aitken challenged the application of the full lien against her recovery in light of the reduction of her recovery due to her employer's fault. *See id.* The Arizona Supreme Court in *Aitken* first explained that if an injured employee who has collected workers' compensation benefits successfully recovers against a third party who caused or contributed to the injury, A.R.S. § 23–1023(C) allows the employer or its carrier to place a

---

2. When a new indoor pyrotechnic device being tested by Todd Stout exploded in the FPI warehouse and started a fire, Stout attempted to exit through the rear door of the building. However, a co-worker had locked the back door, allegedly in violation of OSHA regulations, and Stout was forced to exit through a burning portion of the warehouse.

lien on the recovery. *See id.* at 389–90, 904 P.2d at 458–59.

¶ 10 The *Aitken* court then pointed out that before the legislature abolished or severely restricted joint and several liability by enacting A.R.S. § 12–2506, injured employees could receive their full measure of damages from third-party tortfeasors even when employers were partially liable for the injuries. *Id.* at 390, 904 P.2d at 459. Once joint and several liability was abrogated, the court noted, employees who had given up their right to sue negligent employers would see their recoveries against third parties effectively reduced twice, first, due to the employers' own fault and, second, when employers and their carriers satisfied full liens against those diminished awards. *See id.* The resulting diminution of the injured employee's total recovery, said the *Aitken* court, was inconsistent with the overall purpose of the workers' compensation scheme, which is to protect injured employees. *Id.*

¶ 11 To remedy this injustice, the *Aitken* court held that "a carrier may assert a lien on a third party recovery only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages fixed by verdict in the action." *Id.* at 392, 904 P.2d at 461. As the court explained, "the lien and any future credit should apply only to the extent that compensation benefits paid exceed the negligent employer's proportionate share of the total damages awarded in the third party action." *Id.* The court indicated that the employee should not have to suffer from the combined effect of first having his or her award reduced by the employer's fault and then having to satisfy the full amount of the lien in favor of the employer and its carrier from this diminished recovery. *See id.*

¶ 12 In *Grijalva v. Arizona State Compensation Fund*, 185 Ariz. 74, 912 P.2d 1303 (1996), the Arizona Supreme Court examined whether equitable apportionment could be applied where the third-party claim had been conditionally settled and a "summary trial" established the amount of the employee's damages and the proportion of employer's fault. The *Grijalva* court pointed out that in *Aitken*, the parties did not have any advance agreement to pay or receive any amount of money, whereas *Grijalva* involved an attempt to settle a third-party claim without approval of the compensation carrier and to seek an assignment of fault that would limit or negate the carrier's lien rights. *Id.* at 76, 912 P.2d at 1305.

¶ 13 In reaching its decision, the *Grijalva* court agreed with the following portion of the court of appeals' conclusion in the case:

> [A]bsent the statutorily required approval of any compromise of the lien amount by the Fund, neither the parties nor the trial court had any authority to take any action which would affect the Fund's subrogation rights under the statute. The trial court's ruling that [the employer] was 100% at fault, and that both [the defendants] were not negligent was, therefore, a meaningless gesture.

*Id.* The court noted that because the Fund had not approved the settlement, it was unauthorized, and the "summary trial" was of no consequence because there was no need to apportion fault or fix the amount of the employee's damages; *Aitken*, the court pointed out, neither required nor authorized such a procedure. *See id.* In fact, said the *Grijalva* court, "*Aitken* did not address rules governing the compromise of disputed third party claims." *Id.* at 77, 912 P.2d at 1306.

¶ 14 Given the holdings and language of these two supreme court cases, we must reject the Stouts' arguments. The policy considerations that led to the holding of *Aitken* are not present in a settlement of a third-party action like the one presented here. The goal of the equitable apportionment rule is to allow a fair recovery for an employee whose award against a third party is reduced by both the proportion of employer fault and the carrier's lien. In the proposed settlement between Luna Tech and the Stouts, there was no reduction of the settlement amount for employer fault because the amount of damages was not determined at trial nor was there any judicial determination of employer fault to reduce those damages. Instead, the amount to be recovered by the Stouts in their action against Luna Tech was determined by Luna Tech's policy limits and its offer to settle the case.

¶ 15 *Aitken* does not address whether equitable apportionment applies in the settlement of a third-party claim, and *Grijalva* squarely rejects the use of a summary proceeding to artificially determine an amount of employer fault to be offset against a settlement amount. Because the policy concerns of *Aitken* are not implicated in a settlement like the one before us, we see no logical reason to extend its rule to the compromise of such a claim. Accordingly, we conclude that the trial court did not err in ruling that equitable apportionment does not apply when a third-party action is settled at policy limits and there is no evidence that employer fault affected the offer to settle at policy limits.

### B. Good Faith of Carrier

¶ 16 The Stouts acknowledge that A.R.S. § 23–1023(C) requires an injured worker to obtain the carrier's approval of a settlement of a third-party action if the amount to be recovered will not fully satisfy the compensation carrier's lien. They argue, however, that a workers' compensation carrier does not have the right to unreasonably withhold consent to a third-party settlement, and they assert that the Fund acted unreasonably and in bad faith when it refused to consent to the Stouts' proposed settlement with Luna Tech.[3]

¶ 17 This court addressed a similar situation in *Boy v. Fremont Indemnity Co.*, 154 Ariz. 334, 742 P.2d 835 (App.1987). There Boy, the injured employee, asked the carrier to compromise its statutory lien so that he could gain something from a settlement with a third-party defendant. *See id.* at 335, 742 P.2d at 836. The carrier refused to compromise its lien, and Boy asserted that the carrier's refusal to compromise blocked the settlement. *See id.* The jury found that the third party was not liable, although the verdict was reversed on appeal and the case was remanded for a new trial. *See id.* at 335, 742 P.2d at 836.

¶ 18 Boy later brought a bad faith action against the carrier based in part on its refusal to compromise its lien. *See id.* at 336, 742 P.2d at 837. On appeal, the issue was whether the carrier breached its implied duty to act in good faith by refusing to compromise its lien. *See id.*

¶ 19 The *Boy* court noted that by electing to accept workers' compensation, Boy became bound by the limitation of the workers' compensation statutes. *Id.* One of those limitations, set forth in A.R.S. § 23–1023(C), is that the carrier "shall have a lien on the amount actually collectable." *Id.* Pointing out that Arizona courts have consistently resisted efforts to limit insurers' liens, the *Boy* court concluded that "no reasonable person would consider [the carrier's] compromise of its lien to be a benefit that Boy had the right to expect from the contractual relationship." *Id.* at 336–37, 742 P.2d at 837–38.

¶ 20 As to the argument that the carrier had a duty to give equal consideration to the insured's interests as well as its own, the court noted that requiring the insurer "to compromise its statutory lien would compel it to give Boy's interests priority over its own." *Id.* at 337, 742 P.2d at 838. The duty of good faith, said the court, "merely requires the insurer to give equal consideration to the interests of both parties." *Id.*

¶ 21 Here, the Fund offered to compromise its lien for about a third of the then current lien amount, but the Stouts refused the offer, taking the position that the employer's liability, if determined by litigation or arbitration, would exceed the lien amount. However, as we have decided above, in a settlement with a third-party defendant, the employer's liability does not offset the lien amount. Therefore, the Fund had no duty to litigate or arbitrate the employer's liability or to compromise its lien based on alleged em-

---

**3.** The Fund argues that the issue of its alleged "bad faith" was not presented to the trial court for decision and thus cannot be raised on appeal. We note, however, that the Stouts alleged in their complaint that the Fund's refusal to consent to the settlement violated its duty of good faith and fair dealing. They also argued in their response to the Fund's motion for summary judgment re:

A.R.S. § 23–1023(C) lien rights that the Fund did not have the right to unreasonably withhold consent to the third-party settlement. Although the trial court did not directly address this argument in its ruling, it impliedly rejected it when ruling in favor of the Fund. Therefore, we consider it on appeal.

ployer responsibility for Todd Stout's injuries.

¶ 22 The Stouts argue that nothing in *Boy* addresses the application of the duty of good faith and fair dealing to the carrier's granting or withholding consent to a third-party settlement. *Boy*, however, does send the message that a carrier's statutory lien has strong protection under the law and that the carrier may reasonably protect its right to recover the lien amount. We see nothing unreasonable about the Fund's offer to approve the settlement if the Stouts paid about a third of the lien amount and gave full future credit. The Fund did not exercise bad faith by asserting a right to at least a portion of its lien amount. As noted in *Boy*, the duty of good faith merely required the Fund to give equal consideration to the interests of both parties; it was not required to completely disregard its own interests. Therefore, the trial court did not err in effectively rejecting the Stouts' allegation that the Fund breached its duty of good faith and fair dealing.

### C. Satisfaction of the Lien from Family Members' Recoveries

¶ 23 The Fund argued below that its lien rights concerning payments made to and on behalf of Todd Stout may be satisfied from the recoveries by Mr. Stout's wife, son, and mother in the *Stout v. Luna Tech* case. The trial court ruled that the lien could be enforced against any recovery, including that of the wife. However, it questioned whether the lien should be satisfied from recoveries of children or parents, particularly if they did not receive any direct benefits from the compensation carrier. In the end, however, the court concluded that *Martinez*'s silence on this issue meant that the lien should be paid first and then the remaining settlement proceeds, if any, would be paid to the beneficiaries. The Stouts argue on appeal that these rulings are not supported by the language of A.R.S. § 23–1023(C) and are contrary to established case law.

¶ 24 Section 23–1023(A) permits a worker injured on the job to receive workers' compensation benefits *and* to sue a third party not in the same employ who negligently caused the injury. If the worker dies from the injury, his or her dependents may pursue an action against the third party. *See* A.R.S. § 23–1023(A). Under A.R.S. § 23–1023(C), the employer or its compensation carrier has a lien on any third-party recovery:

> If [the worker or his/her dependents] proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid.... The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case....

¶ 25 The *Martinez* court examined whether a compensation carrier's lien extended to damages for loss of consortium paid by a third party to the spouse of an injured worker. 168 Ariz. at 308, 812 P.2d at 1126. The court noted that in previous cases, our supreme court had concluded that under A.R.S. § 23–1023(C), the entire recovery from a third party—including awards for elements such as pain and suffering and loss of consortium that are not compensable under workers' compensation—was subject to the compensation carrier's lien. *See id.* at 309, 812 P.2d at 1127 (citing *Hendry v. Industrial Comm'n*, 112 Ariz. 108, 538 P.2d 382 (1975); *Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.*, 111 Ariz. 259, 263, 527 P.2d 1091, 1095 (1974)). The *Martinez* court thus held that "the statutory lien extends to a spouse's recovery for loss of consortium, even when the amount of that recovery is segregated from the amount awarded the injured employee." *Id.* at 310, 812 P.2d at 1128.

¶ 26 The *Martinez* court, however, went on to consider "whether the credit attributable to the spouse's recovery for loss of consor-

**244**

tium offsets only the spouse's potential death benefits or offsets both the injured employee's compensation benefits and potential death benefits." *Id.* In examining this issue, the court first noted that both subsections A and B of A.R.S. § 23–1023 differentiate between an action brought by the employee and an action brought by his or her dependents, but observed that the statute does not define how credit should be applied when the employee and the dependents recover segregated damages prior to the death of the worker. *See id.* The *Martinez* court resolved the issue as follows:

> The statutory language gives effect to the general purpose of reimbursing the carrier *for its compensation expenditures* by extending the lien to the amount actually collected from the third party *to the extent of benefits paid.* In this case, however, petitioner's spouse has no present right to receive death benefits and the carrier has paid her no benefits. If the spouse never claims or receives death benefits, therefore, no statutory basis exists to give rise to an offset. Although other interpretations are possible, we conclude that the most reasonable interpretation of the statutory language is that when a third party recovery is segregated between present and potential workers' compensation claimants, the carrier's lien rights attach sequentially. In this case, then, section 1023 grants [the carrier] a lien against petitioner's total recovery, *to the extent of* benefits paid. [The carrier] can offset the credit attributable to petitioner's segregated recovery against future benefits claimed by petitioner. Section 1023 also grants [the carrier] a lien against the petitioner's spouse's recovery for loss of consortium. If the spouse's potential claim for death benefits matures, [the carrier's] lien will extend to the amount actually collected by the spouse from the third party *to the extent of* benefits paid. [The carrier] may not, however, apply the credit available to offset the spouse's potential compensation claim to offset petitioner's present compensation benefits.

*Id.* at 310–11, 812 P.2d at 1128–29 (footnote omitted).

¶ 27 In the Stouts' circumstances, Debbie Stout has received some benefits from the Fund due to Mr. Stout's death and apparently continues to receive benefits. Thus, she is in a different position from the wife in *Martinez.* We believe, however, that the holding of *Martinez* is applicable here.[4] The Fund has a lien, for benefits paid to Mr. Stout, against any recovery in the action against Luna Tech attributed to the claims of Mr. Stout's estate for benefits paid to him. It also has a lien against Debbie Stout's wrongful death and loss of consortium recovery, if any, for benefits that have been and will be paid to her since Mr. Stout's death. Under *Martinez,* her tort recovery may be used to satisfy the liens attributable to the benefits paid to her, but it may not be used to offset compensation benefits paid to and on behalf of Todd Stout.

¶ 28 *Martinez* indicates that the lien applies on each person's recovery to the extent of benefits paid that person. Although the *Martinez* court mentioned that the children of the worker each received $5000 in the third-party settlement, it did not discuss whether the lien extended to those damages and apparently did not apply the lien against those amounts. 168 Ariz. at 308, 812 P.2d at 1126. Here, it is not clear from the record whether any death benefits or other compensation were paid by the Fund for the benefit of Logan Stout individually. If so, the Fund may satisfy its lien from his recovery to the extent of such payments.

¶ 29 Todd Stout's mother, Pat Stout, apparently has not and will not receive any benefits from the Fund. Therefore, under *Martinez,* the Fund's lien may not be satisfied from her recovery in the third-party action.

### D. Constitutionality of Lien Rights

¶ 30 The Stouts argue that A.R.S. § 23–1023(C) as interpreted by the *Martinez* court is unconstitutional. They maintain that the legislature's creation of a statutory lien vio-

---

4. The *Martinez* court cautioned that claims should not be valued so as to circumvent the purposes of the workers' compensation system. 168 Ariz. at 310 n. 1, 812 P.2d at 1128 n. 1.

lates the constitutional provisions that protect the right to recover damages for personal injury or death because such a lien, as applied by *Martinez* to loss of consortium claims, reduces the amount of damages recoverable. In other words, they assert, the constitutional authority to create a workers' compensation system does not include the authority to limit damages for loss of consortium suffered by spouses and dependents prior to the death of the worker.

¶31 Article 2, § 31 of the Arizona Constitution's Declaration of Rights provides that "[n]o law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person." Similarly, article 18, § 6, of Arizona's Constitution guarantees that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Article 18, § 8, however, contains an exception to article 18, § 6, that allows the State to deprive a worker of an action for industrial injuries if the employee has not opted out of the workers' compensation scheme and has received compensation benefits. *See Dunn v. Industrial Comm'n,* 177 Ariz. 190, 196, 866 P.2d 858, 864 (1994). If the worker dies from his injury, benefits are paid to his dependents. Ariz. Const. art. 18, § 8.

¶32 We conclude that the lien rights of A.R.S. § 23–1023(C) as applied by *Martinez* to a recovery for loss of consortium are not unconstitutional. Simply put, a lien on a damages recovery to offset compensation paid is not a limitation on the availability or amount of damages recovered in a third-party action. As pointed out by the *Martinez* court, A.R.S. § 23–1023 "furthers the general policy of preventing an employee from obtaining the double recovery that would result if he received both compensation benefits and damages from a third party." 168 Ariz. at 310, 812 P.2d at 1128. In addition, stated the court, the statutory lien "furthers the legislative purposes of requiring 'the third party to pay what he would normally pay if there were no workers' compensation, [reimbursing] the carrier for its compensation expenditure, and [allowing] the

compensation beneficiary to enjoy the excess of the damage recovery over compensation.'" *Id.* (quoting *Mannel v. Industrial Comm'n,* 142 Ariz. 153, 155, 688 P.2d 1045, 1047 (App. 1984)). Thus, when an injured worker or the dependents of a deceased worker recover from a third party, the compensation benefits paid essentially act as an advance against the litigation award; the worker or dependents have the advantage of getting medical payments, lost wages, and other benefits paid early on by the compensation carrier while waiting for tort recovery that may then be used to offset the amounts already paid in order to prevent double recovery.

¶33 We also reject the Stouts' assertion that it is unconstitutional to apply the lien for benefits paid to the worker's spouse against an award for loss of consortium suffered before the death of the worker. Regardless of whether recovery is for loss of consortium before or after the death, the offset against the recovery cannot be for more than the spouse receives from the compensation carrier. Thus, regardless of the name given to the benefits or damages—whether for loss of consortium, wrongful death, or death benefits—the surviving spouse will receive at least the amount recovered in the third-party action and possibly more if either the compensation benefits eventually exceed the tort award or the award exceeds the benefits paid. Accordingly, the lien statute as interpreted by *Martinez* does not limit the recovery and hence is not unconstitutional.

## CONCLUSION

¶34 In summary, we affirm the trial court's ruling that equitable apportionment does not apply when a third-party action in a workers' compensation setting is resolved by a settlement. We also affirm the trial court's finding that the Fund did not breach its duty of good faith and fair dealing when the parties failed to agree on a compromise of the lien and the Fund declined to approve the proposed settlement between the Stouts and Luna Tech. We conclude that the lien applies to Debbie Stout's third-party recovery to the extent of the benefits received by her and to Logan Stout's recovery, to the extent he individually receives any benefits from the

Fund. We reverse the finding that the lien applies to Pat Stout's recovery. Finally, we conclude that impressing a workers' compensation lien against loss-of-consortium recovery is not unconstitutional.

¶ 35 The Fund requests an award of its attorneys' fees incurred in this appeal pursuant to A.R.S. § 12–341.01 based on the bad faith allegations of the case. Because the bad faith issue is a minor portion of the case and the other issues provide no basis for an award of fees, we decline to award fees. Because the Fund has prevailed on all major issues, it is entitled to an award of its costs incurred on appeal.

CONCURRING: WILLIAM F. GARBARINO, Judge, and JAMES B. SULT, Judge.