20 P.3d 1158

Lane **ROWLAND, an individual, on his own behalf and as representative of a class of individuals similarly situated, Plaintiff/Counterdefendant/Appellant/Cross–Appellee,**

v.

**GREAT STATES INSURANCE COMPANY, a corporation, and Patti Marsillo, an individual, Defendants/Counterclaimants/Appellees/Cross-Appellants.**

No. 2 CA–CV 00–0082.

Court of Appeals of Arizona, Division 2, Department A.

March 13, 2001.

As Corrected May 24, 2001.

---

Herman, Goldstein & Forsyth, P.C., Scottsdale by Keith B. Forsyth and Grabb & Durando, Tucson by Robert M. Grabb, Attorneys for Plaintiff/Counterdefendant/Appellant/Cross–Appellee.

Steven C. Lester, P.C. by Steven C. Lester, Phoenix Attorney, for Defendants/Counterclaimants/Appellees/Cross–Appellants.

PELANDER, Judge.

¶ 1 Appellees/cross-appellants Great States Insurance Company and Patti Marsillo (collectively, Great States) included independent medical examination (IME) expenses in Great States's workers' compensation lien against appellant/cross-appellee Lane Rowland's third-party tort settlement. Rowland objected and sued Great States on various

theories. The trial court granted summary judgment in favor of Great States but denied its request for attorney's fees. The court also denied Rowland's subsequent motion to amend his complaint to include a claim for declaratory relief. Rowland appeals from the trial court's grant of summary judgment and its denial of the motion to amend his complaint. Great States cross-appeals from the trial court's denial of attorney's fees. We affirm in part, reverse in part, and remand the case for further proceedings.

## BACKGROUND

¶ 2 The underlying facts are undisputed. In December 1996, Rowland sustained a work-related injury allegedly caused by a third-party tortfeasor. Rowland received workers' compensation benefits from Great States, his employer's insurer, and also pursued a claim against the third-party tortfeasor. In March 1997, Rowland attended an IME Great States had arranged to evaluate his need for further treatment. When Rowland later settled the third-party claim, Great States claimed a lien, pursuant to A.R.S. § 23–1023(C), in the amount of $1,140.38, consisting of $704.12 for the IME cost and $436.26 for other benefits it had paid.

¶ 3 Between January and October 1998, the parties disputed whether Arizona law permitted Great States to include the IME expense in its lien. Apparently aware of that dispute, the third-party tortfeasor's insurer did not release settlement funds to satisfy the lien until August 31, 1998, when it issued two checks payable to Rowland, his attorney, and Great States. One check covered the undisputed benefits of $436.26, and the second (IME check) was for the disputed IME expense of $704.12.

¶ 4 On September 22, Rowland and his attorney endorsed the first check and forwarded it to Great States. They did not endorse the IME check, however, but forwarded it to Great States and demanded that it endorse and return that check to them. When Great States did not promptly do so, Rowland filed this action, alleging claims for bad faith breach of the covenant of good faith and fair dealing, breach of contract, fraud, bad faith for having threatened to seek sanctions against Rowland's attorney if he filed this action, and unjust enrichment. Rowland also alleged that he filed the action on behalf of a class of similarly situated individuals.

¶ 5 Great States endorsed the IME check and returned it to Rowland after he had filed the complaint, but before it was served on Great States. Thereafter, Great States filed an answer and a counterclaim for abuse of process. Following some discovery, Rowland moved for partial summary judgment, contending § 23–1023(C) precluded Great States from including the IME expense in its lien. Great States moved for summary judgment on all of Rowland's claims, contending he had failed to allege any colorable claim for relief. The trial court granted Great States's motion, denied Rowland's, and later denied his subsequent motion to amend the complaint to add a claim for declaratory relief. This appeal and cross-appeal followed the trial court's entry of judgment, pursuant to Rule 54(b), Ariz. R. Civ. P., 16 A.R.S., dismissing Rowland's complaint with prejudice and denying Great States's request for attorney's fees.

## DISCUSSION

### I. Summary Judgment

¶ 6 Rowland challenges the trial court's summary judgment on two of his claims: bad faith breach of the covenant of good faith and fair dealing and breach of contract.[1] Because the underlying facts are undisputed, we determine de novo whether the trial court correctly applied the law. *Bills v. Arizona Property & Cas. Ins. Guar. Fund*, 194 Ariz. 488, ¶ 6, 984 P.2d 574, ¶ 6 (App.1999). We will affirm if the trial court's ruling is correct on any ground, *Glaze v.*

1. In his response to Great States's motion for summary judgment, Rowland abandoned his individual claim for unjust enrichment. And, because he has not raised on appeal any issues concerning his claims for fraud and bad faith in the nature of threatening sanctions, he has conceded those claims as well. Ariz. R. Civ.App. P. 13(a)(5), (6), 17B A.R.S.; *Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (failure to raise issue in briefs on appeal constitutes waiver of issue).

*Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986), and if the facts produced in support of Rowland's claims "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion [he] advanced." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

## A. Breach of Covenant of Good Faith and Fair Dealing

¶ 7 We first consider Rowland's bad faith claim for breach of the covenant of good faith and fair dealing. Section 23–1023(C), provides, in pertinent part:

> If [the employee] proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier ... shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. . . .

According to Rowland, the statute does not permit an insurer to recover IME expenses and, therefore, Great States's protracted attempt to do so constituted bad faith. Conversely, Great States contends no actionable bad faith exists because Rowland did not allege that Great States had intentionally and unreasonably failed to process or pay his workers' compensation claim.

¶ 8 Great States's restrictive view of bad faith is too narrow and inconsistent with Arizona law. "In Arizona, insurance contracts include an implied covenant of 'good faith and fair dealing,' whereby each party is 'bound to refrain from any action which would impair the benefits which the other had the right to expect from the contract or the contractual relationship.'" *Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 451, 943 P.2d 808, 811 (App.1997), quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). "The core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured," *Deese v. State Farm Mutual Automobile Insurance Co.*, 172 Ariz. 504, 508, 838 P.2d 1265, 1269 (1992), "'giving equal consideration in all matters to the insured's interest.'" *Id.* at

507, 838 P.2d at 1268, quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 715 P.2d 1133, 1136 (1986).

¶ 9 It is undisputed that Rowland was a third-party beneficiary of the workers' compensation insurance contract between his employer and Great States. "[B]ad faith tort actions are based in the underlying contract." *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 377 n. 4, 943 P.2d 729, 737 n. 4 (App.1996). See also *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 176, 913 P.2d 1092, 1094 (1996); *Rawlings*, 151 Ariz. at 153, 726 P.2d at 569. An insurer, however, "can be held liable for bad faith even when it does not violate any express provision of the insurance contract." *Lloyd*, 189 Ariz. at 377, 943 P.2d at 737. See also *Deese*; *Rawlings*. As Great States correctly notes, "[t]he tort of bad faith arises when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). Such acts or omissions, however, are not the sole or exclusive bases for a bad faith claim.

¶ 10 For example, the insurer in *Rawlings* unquestionably satisfied its contractual obligations to the insureds but refused to provide them an investigative report that implicated another policyholder. *Rawlings*, 151 Ariz. at 152, 726 P.2d at 568. Our supreme court concluded that "[f]ailure to perform the express covenant to pay the claim is not the sine qua non for an action for breach of the implied covenant of good faith and fair dealing." *Id.* at 157, 726 P.2d at 573. Rather, the implied covenant "entitle[s] the insured to insist that, to serve its own interests, the insurer not provide the promised protection with one hand while destroying the very objects of the relationship with the other." *Id.* at 155, 726 P.2d at 571. Thus, an insurer may be found liable for bad faith whenever it unreasonably "'seeks to gain financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, ¶ 20, 995 P.2d 276, ¶ 20 (2000), quoting *Rawl-*

*ings*, 151 Ariz. at 156, 726 P.2d at 572. And, although a contractual nexus is required, failure to pay or process a claim is not a necessary element of bad faith. *Deese*; *Rawlings*; *Lloyd*.

¶ 11 The common law cause of action for breach of the covenant of good faith and fair dealing extends to claims against workers' compensation insurers. See *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 274, 872 P.2d 668, 678 (1994); *Boy v. Fremont Indem. Co.*, 154 Ariz. 334, 337, 742 P.2d 835, 838 (App.1987); *Franks v. United States Fidelity & Guar. Co.*, 149 Ariz. 291, 295–97, 718 P.2d 193, 197–99 (App.1985). In addition, that this action stems from an insurer's assertion of a workers' compensation lien does not necessarily negate Rowland's bad faith claim. As Great States points out, an insurer has a right to protect its valid interest so long as it does not give that interest paramount consideration, and an insurer does not act in bad faith by refusing to compromise its statutory lien. See *Stout v. State Compensation Fund*, 197 Ariz. 238, 3 P.3d 1158 (App. 2000); *Boy*. *Boy* and *Stout*, however, did not rule out all bad faith claims based on a workers' compensation insurer's action or inaction concerning its lien.

¶ 12 Although we agree with those cases, neither is controlling here. Because the claimants in *Boy* and *Stout* did not dispute the validity or amount of the workers' compensation insurers' liens, they could not establish that the insurers were trying to gain an unfair financial advantage. *Zilisch*; *Rawlings*. In contrast, Rowland *does* challenge the validity and amount of Great States's lien to the extent it attempted to recoup IME costs. And, if such costs are not includable in the lien, he has presented a triable issue of whether Great States, by claiming otherwise, sought to gain an unfair financial advantage over him. Unlike an insurer's refusal to compromise a lien, its correct calculation of the lien amount is "a benefit that [Rowland] had the right to expect from the contractual relationship." *Boy*, 154 Ariz. at 337, 742 P.2d at 838.

¶ 13 Great States argues, however, that because its actions were reasonable as a matter of law, summary judgment was appropriate. According to Great States, its lien was proper because an IME expense qualifies as "compensation" as that term is used in § 23–1023(C). Great States also seems to suggest that, even if it could not recover the IME expense as part of its lien, its position was fairly debatable because Arizona courts had not determined the issue.

¶ 14 Even had the trial court addressed the application of § 23–81023(C), as Rowland requested, we review statutory interpretation issues de novo. *Bills*, 194 Ariz. 488, ¶ 6, 984 P.2d 574, ¶ 6. See also *Hayes*, 178 Ariz. at 268, 872 P.2d at 672 ("If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation."). Section 23–1023 allows an injured employee to receive workers' compensation benefits while pursuing a claim against a responsible third party. But the workers' compensation insurer has a lien against any third-party recovery for "compensation and medical, surgical and hospital benefits" that it pays to or on behalf of the injured employee. § 23–1023(C). The statute does not expressly or implicitly include IME expenses, nor can we reasonably construe it as doing so.

¶ 15 For workers' compensation purposes, "compensation" is defined as "the compensation and benefits provided by [Title 23, chapter 6, A.R.S.]." A.R.S. § 23–901(4). Although that definition is less than illuminating, "compensation" generally refers to lost wages and lost earning capacity, see A.R.S. § 23–1041, and "benefits" refers to "medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus ... reasonably required at the time of the injury, and during the period of disability." A.R.S. § 23–1062(A).

¶ 16 IME expenses do not fall within either category. Such expenses are unrelated to any lost wages or loss of earning capacity, and an IME is neither treatment nor supplies "reasonably required at the time of the injury, and during the period of disability." § 23–1062(A). Rather, an insurer incurs an IME expense primarily for its own purposes and benefit in managing and evaluating a claim. *Cole v. Byrd*, 167 Ill.2d 128, 212 Ill.

Dec. 234, 656 N.E.2d 1068, 1073 (1995) (hereafter *Cole II*). Great States tacitly admitted as much below when it stated:

> The Legislature, in 1925, recognized that first the Industrial Commission, and now carriers, should not be held hostage to what the injured worker does or does not want and what the injured worker's physician is willing or not willing to do. This is why, since Day 1, the Arizona Legislature has provided for the independent medical examination.
>
> The independent medical examination is a means by which a carrier can ensure that the proper treatment is being prescribed, the necessary treatment is being provided, the treatment being provided is reasonable, and finally, is a means by which the carrier can ensure that the proper testing is performed.

And, "[a]lthough the insurer's expenses may provide some benefit to an injured employee," they are not "considered 'compensation' paid to [the injured employee]."[2] *Cole II*, 212 Ill.Dec. 234, 656 N.E.2d at 1073. See also *Ziegler v. Department of Labor & Industries*, 42 Wash. App. 39, 708 P.2d 1212, 1213–14 (1985) (cost of IME was administrative expense, not compensation benefit).

¶ 17 Furthermore, our supreme court has interpreted the language in § 23–1023(C) to mean that the lien applies only " 'to the extent of the benefits the employer is required by law to provide.' " *State Compensation Fund v. Nelson*, 153 Ariz. 450, 452, 737 P.2d 1088, 1090 (1987), quoting *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982); cf. *Liberty*

*Mut. Ins. Co. v. Western Cas. & Sur. Co.*, 111 Ariz. 259, 263, 527 P.2d 1091, 1095 (1974) (§ 23–1023(C) reflects legislative belief that "compensation carrier should be repaid the amount that it is compelled to pay because of malpractice injuries") (emphasis added). An IME, however, is not a benefit required by law or one the insurer is compelled to provide. Rather, it is an optional tool that the insurer may employ to manage and evaluate claims.[3] See A.R.S. § 23–908(E) (employer may compel employee to submit to IME) (emphasis added); A.R.S. § 23–1026(A) ("An employee … shall submit himself for medical examination … if and when requested by … the insurance carrier.").[4] Thus, IME expenses do not qualify as "compensation" or "benefits" for purposes of § 23–1023(C). *Nelson*; *Chevron*.

¶ 18 Great States's reliance on several out-of-state cases to support a contrary conclusion is misplaced. Although the court in *Cole v. Byrd*, 265 Ill.App.3d 798, 203 Ill.Dec. 215, 639 N.E.2d 254 (1994) (hereafter *Cole I*), held that claim management expenses were compensation, the Illinois Supreme Court reversed that decision in *Cole II*. Thus, *Cole I* is, at best, dubious authority for the proposition that an insurer may recover IME expenses from an injured employee's third-party tort recovery. And, by adopting the reasoning in *Cole II* in ¶ 16 above, we have expressed our disagreement with the conclusion in *Cole I*.

¶ 19 The courts in *Varner v. Gulf Insurance Co.*, 18 Kan.App.2d 801, 859 P.2d 414 (1993), and *State Compensation Insurance Fund v. Workers' Compensation Appeals Board*, 76 Cal.App.3d 136, 142 Cal.Rptr. 654

---

**2.** We are unpersuaded by Great States's argument that IME expenses are "compensation" because, under the prior statutory scheme, such charges were paid by the State Compensation Fund, which was empowered to pay only "compensation benefits." In addition to compensation, the State Compensation Fund was authorized to pay expenses such as examiners' and physicians' salaries. See Ariz. Rev.Code § 1395 (1928); Ariz.Code § 56–905 (1939).

**3.** For this reason, we also reject Great States's attempt to analogize an IME to the payment of death benefits. See *Mannel v. Industrial Comm'n*, 142 Ariz. 153, 688 P.2d 1045 (App. 1984) (death benefits recoverable as part of in-

surer's lien). Death benefits, unlike an IME, are benefits required by law. See A.R.S. § 23–1021(A) (injured employees and dependents of injured employees "shall be entitled to receive and shall be paid such compensation for loss sustained on account of the injury or death").

**4.** We note that, "[i]f an employee unreasonably fails to attend or promptly advise of his inability to attend an [IME] …, any expense of the missed appointment shall be charged to the employee or may be deducted from any present or future entitlement to temporary or permanent disability compensation." Ariz. Admin. Code R20–5–114.

(1977), concluded that workers' compensation insurers could recover expenses analogous to IME expenses based on statutory language that broadly defined compensation. But the Kansas statute, as amended to specifically permit such recovery, included as compensation " 'any other payments made or provided pursuant to the workers compensation act.' " *Varner*, 859 P.2d at 415–16, quoting Kan. Stat. Ann. § 44–504(f) (1992 Supp.). Similarly, the California statute defined compensation as " 'every benefit or payment conferred by Division 4 (of the Labor Code) upon an injured employee.' " *State Compensation Ins. Fund*, 142 Cal.Rptr. at 655, quoting Cal. Labor Code § 3207. In Arizona, however, the term "compensation" does not include "any" or "every" payment made under the workers' compensation act. See § 23–901(4). Rather, as noted above, compensation refers only to lost wages, lost earning capacity, and reasonably necessary medical treatment and supplies. See §§ 23–1041, 23–1062. And, by limiting an insurer's lien to benefits required by law, *Nelson*, our supreme court has implicitly excluded IME expenses from the insurer's lien.

■■■ ¶ 20 Clearly, one purpose of § 23–1023(C) is "to prevent employees from receiving a double recovery." *Aitken v. Industrial Comm'n*, 183 Ariz. 387, 393, 904 P.2d 456, 462 (1995). But IME expenses are not an element of tort damages. See *Cole II*. Thus, prohibiting insurers from recovering IME expenses as part of the statutory lien does not frustrate that purpose. Rather, it prevents insurers from realizing a windfall at the expense of injured employees. *Aitken*. We hold, therefore, that § 23–1023(C) does not permit a workers' compensation insurer to claim or recover IME expenses by including them in its lien.

■■■■ ¶ 21 Because prior Arizona decisions had not squarely addressed that issue, Great States's position that § 23–1023(C) permitted it to recover the IME expense as part of its lien arguably was fairly debatable.[5] But even assuming that is so, "fair debatability" is not automatically dispositive. *Zilisch*, 196 Ariz. 234, ¶¶ 19–21, 995 P.2d 276, ¶¶ 19–21. Rather, as noted above, "whether an insurer has acted in bad faith towards its insured depends on the reasonableness of its conduct." *Deese*, 172 Ariz. at 507, 838 P.2d at 1268. See also *Zilisch*, 196 Ariz. 234, ¶ 19, 995 P.2d 276, ¶ 19 ("[I]n defending a fairly debatable claim, an insurer must exercise reasonable care and good faith."). And, in the context of a motion for summary judgment, "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that . . . the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at ¶ 22, 995 P.2d at ¶ 22.

¶ 22 Rowland presented such evidence here. In a letter to Great States in January 1998, Rowland stated that it could not recover the IME expense because an IME "was not a benefit which was required by law to be provided." He also enclosed and highlighted the relevant Arizona case law. In responding, Great States attempted to characterize the IME as a benefit required by law, stating:

> [T]he IME . . . was medically necessary since Mr[.] Rowland continued with complaints of pain after his discharge by [his health maintenance organization]. Great States sent Mr[.] Rowland to be examined by a specialist to confirm if additional medical treatment was indicated. Therefore, we are entitled to be reimbursed for the charge of $704.12 for the IME.

---

5. Our supreme court recently suggested that an insurer is not immune from bad faith liability merely because its acts or omissions were based on what it contends was a reasonable, and previously unresolved, construction of a statute. Cf. *State Farm Mut. Auto. Ins. Co. v. Lee*, 119 Ariz. 52, ¶ 3, 13 P.3d 1169, ¶ 3 (2000). In cases such as this involving first-party claims, see *Franks*, 149 Ariz. at 295, 718 P.2d at 197, the insurer must "play fairly with its insured." *Rawlings*, 151 Ariz. at 154, 726 P.2d at 570. The insurer also must "give equal consideration in handling the claim, and do so in fairness and honesty." *Lee*, 199 Ariz. 52 n. 3, 13 P.3d 1169 n. 3. And, even when the insurer defends a case by asserting that its actions conformed to statute, the insurer may be liable for bad faith "if the evidence shows its employees could not or did not reasonably believe that [the claimant's demand] could be rejected within the bounds of the law." *Id.* at ¶ 15, 13 P.3d 1169, ¶ 15.

Thus, Great States apparently took the position that the IME was medically necessary. A reasonable jury, however, could conclude otherwise and instead find that the IME was primarily intended to help Great States evaluate the claim and, therefore, that Great States consciously acted unreasonably in attempting to equate an IME with a medical necessity.

¶ 23 Furthermore, the record does not reflect that Great States cited any authority for the proposition that IME expenses were "compensation" until June 1998, and then relied on a distinguishable out-of-state case. From that fact, reasonable jurors could conclude that Great States consciously and unreasonably disregarded the authority Rowland had cited, failed to investigate its own position, and delayed resolving this dispute.

¶ 24 Finally, that Great States eventually endorsed and returned the IME check to Rowland does not foreclose a finding of bad faith. See *Zilisch*, 196 Ariz. 234, ¶ 20, 995 P.2d 276, ¶ 20; *Rawlings*, 151 Ariz. at 156, 726 P.2d at 572. That action may even suggest that Great States knew it had no right to recover those costs and that it consciously acted unreasonably when it attempted to do so.[6] Because Rowland presented triable issues of fact bearing on his bad faith claim and because Great States was not entitled to judgment as a matter of law, the trial court erred in granting summary judgment on that claim.

### B. Breach of Contract

¶ 25 Rowland next contends the trial court erred in granting summary judgment on his contract claim, arguing that § 23–1023(C) became part of that contract by operation of law and that breach of the covenant of good faith and fair dealing sounds in both contract and tort. We find no error.

¶ 26 Although Rowland correctly contends that insurance contracts must be read in light of controlling statutes, *Hill v. Chubb Life American Insurance Co.*, 182 Ariz. 158, 164, 894 P.2d 701, 707 (1995), not

every relevant statute becomes a part of an insurance contract. Unlike the uninsured motorist statute at issue in *Insurance Co. of North America v. Superior Court*, 166 Ariz. 82, 800 P.2d 585 (1990), on which Rowland relies, § 23 1023(C) does not impose a duty on workers' compensation insurers to offer or provide any coverage. Thus, although the insurance contract must be read in light of § 23–1023(C), the statute is not part of the contract.

¶ 27 Similarly, an alleged breach of the covenant of good faith and fair dealing does not always support an actionable contract claim. That covenant is implied in every contract; therefore, contract law generally provides the remedy for its breach. *Rawlings*, 151 Ariz. at 158, 726 P.2d at 574. But when a special relationship exists, such as that between parties to an insurance contract, a plaintiff may not necessarily maintain both a contract and a tort action for breach of the covenant. See *Taylor*, 185 Ariz. at 175–77, 913 P.2d at 1093–95 (implicitly recognizing that, when special relationship is present and alleged breach of covenant does not involve breach of any express provision of contract, the cause of action sounds in tort).

¶ 28 Rowland's contract claim is based solely on his contractual relationship with Great States, specifically, his third-party beneficiary status, rather than any alleged breach of an express provision of the insurance contract between Great States and his employer. As such, the claim sounds in tort, not contract. *Taylor*. The trial court, therefore, properly granted summary judgment in favor of Great States on Rowland's contract claim.

### II. Motion to Amend Complaint

¶ 29 Rowland next contends the trial court erroneously denied his motion to amend his complaint to include a claim for declaratory relief. That new count would have addressed whether § 23–1023(C) permitted Great States to claim or recover the

---

**6.** Evidence of settlement offers or compromise settlements "is not admissible to prove liability for or invalidity of the claim or its amount." Ariz. R. Evid. 408, 17A A.R.S. From the record

before us, however, we cannot tell whether any correspondence, much less an offer of settlement, accompanied the IME check when Great States returned it to Rowland.

IME expense as part of its lien. Because we have resolved that question in connection with Rowland's bad faith claim, the issue is now moot.

## III. Attorney's Fees

¶ 30 After the trial court entered summary judgment in its favor, Great States requested discretionary attorney's fees under A.R.S. § 12–341.01(A) for Rowland's breach of contract claim and mandatory fees under § 12–341.01(C) for his claims of fraud, unjust enrichment, and bad faith in threatening sanctions. The trial court denied those requests without explanation. Great States challenges that ruling in its cross-appeal.

¶ 31 We review a trial court's decision to deny discretionary attorney's fees under § 12–341.01(A) for an abuse of discretion. *Hale v. Amphitheater School Dist. No. 10*, 192 Ariz. 111, ¶ 20, 961 P.2d 1059, ¶ 20 (App.1998). We will not disturb the trial court's ruling unless it is not supported by any reasonable basis. *Id.* As for mandatory fees under § 12–341.01(C), we will uphold the trial court's findings on subjective bad faith, subjective intent to harass, and objective groundlessness unless they are clearly erroneous. See *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 181, 745 P.2d 617, 629 (App.1987). Under both subsections, we view the record in the light most favorable to sustaining the trial court's decision. See *Pelletier v. Johnson*, 188 Ariz. 478, 480, 937 P.2d 668, 670 (App.1996); *Gilbert*, 155 Ariz. at 181, 745 P.2d at 629.

¶ 32 Section 12–341.01(A) permits a trial court, in its discretion, to award reasonable attorney's fees to the successful party in contested contract actions. In determining whether to award such fees, the trial court may consider, inter alia, "the novelty of the legal question presented." *Uyleman v. D.S. Rentco*, 194 Ariz. 300, ¶ 27, 981 P.2d 1081, ¶ 27 (App.1999). Whether a workers' compensation insurance contract includes § 23–1023(C) by operation of law was a novel question.[7] Thus, we cannot say the trial court had no reasonable basis for denying Great States's request for discretionary fees. *Hale*.

¶ 33 Section 12–341.01(C) requires a trial court to "award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith." All three elements must be present to support a mandatory fee award. *Gilbert*, 155 Ariz. at 180, 745 P.2d at 628. And, as noted above, we will uphold the trial court's findings on each of those elements unless they are clearly erroneous. *Id.* at 181, 745 P.2d at 629.

¶ 34 The trial court made no express findings when it denied attorney's fees. Nevertheless, by denying the fee request, it implicitly found that at least one of the three required elements in § 12–341.01(C) was lacking. See *General Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 193, 836 P.2d 404, 406 (App.1992) (necessary findings are implied in every judgment). We cannot conclude that the trial court clearly erred in that finding. Although Rowland's claims for fraud, unjust enrichment, and bad faith in threatening sanctions appear ill founded, it is not clear that they constituted harassment. Rowland apparently filed the claims to protect his interest in his third-party settlement and not with any malicious intent or other improper motive toward Great States. See *Auman v. Auman*, 134 Ariz. 40, 43, 653 P.2d 688, 691 (1982).

## IV. Conclusion

¶ 35 We reverse the trial court's summary judgment in favor of Great States on Rowland's bad faith claim for tortious breach of the covenant of good faith and fair dealing and remand the case for further proceedings on that claim. We affirm the trial court's judgment in all other respects, including its

---

7. Rowland also contends the trial court might have properly denied discretionary fees because a fee award would have caused him an extreme hardship. Because Rowland did not present any evidence showing a prima facie case of hardship, however, the trial court could not consider that factor. *Woerth v. City of Flagstaff*, 167 Ariz. 412, 420, 808 P.2d 297, 305 (App.1990) ("To raise the issue of undue hardship ... [the party opposing the fee request] was required to present specific facts by affidavit or testimony.").

denial of Great States's request for attorney's fees.

CONCURRING: J. WILLIAM BRAMMER, Presiding Judge, M. JAN FLÓREZ, Judge.