912 P.2d 1303

Waldo R. GRIJALVA III, a single man; Waldo R. Grijalva, Jr. and Rosa Grijalva, parents of Waldo R. Grijalva III, Plaintiffs/Appellees,

v.

ARIZONA STATE COMPENSATION FUND, a corporation, Defendant/Appellant.

No. CV–93–0329–PR.

Supreme Court of Arizona.

March 19, 1996.

---

Law Offices of Richard D. Grand by Richard D. Grand, Tucson, Copple, Chamberlin & Boehm, P.C. by Steven D. Copple, Scott E. Boehm, Phoenix, for Plaintiffs/Appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Frank W. Moskowitz, Phoenix, for Defendant/Appellant.

OPINION

Memorandum Decision of the Court of Appeals, Division Two, Filed July 20, 1993, AFFIRMED

ZLAKET, Vice Chief Justice.

On March 27, 1990, claimant Waldo Grijalva was rendered quadriplegic when he fell from the roof of a house while working for Matalone Construction Company. He has no memory of the accident. According to the only eyewitness, a co-employee named Saucedo, the fall was caused by a board that broke while Grijalva was standing on it. The board allegedly had been manufactured by International Paper Company and distributed by Western Lumber Supply.

Grijalva accepted workers' compensation benefits and filed a third party action against both International Paper and Western Lumber. Thereafter, facing a motion for summary judgment, he accepted a structured settlement offer worth $275,000 from Western. To preclude International from later blaming the accident on its former co-defendant, the settling parties agreed that Western's summary judgment motion should be granted. The trial court subsequently did so.

Grijalva's case against International, meanwhile, proved to be of questionable validity. The broken board was not available for inspection because Saucedo had inexplicably disposed of it after the accident. Moreover, although this witness claimed to have personally nailed the board to a roof truss before it allegedly fractured, later evidence revealed that the nailing had not occurred. It increasingly appeared, therefore, that Grijalva's fall was caused by the negligence of his fellow worker.

Nevertheless, in an effort to guard against the possibility of a large jury verdict, International offered to settle the claim against it for $625,000. Concerned that he would not receive any of the proceeds because of the Compensation Fund's statutory lien, see A.R.S. § 23–1023(C), Grijalva initially declined the offer. His attorney, with the assistance of the trial judge, thereafter contacted the Fund to see if it would accept $50,000 in full satisfaction of the lien. The Fund refused. Despite this, the parties went ahead with a "conditional" settlement in the amount of $625,000. They agreed that: (1) the claim would proceed to a "summary trial" before the judge for a determination of liabil-

ity and damages; and (2) final settlement would be contingent on the Fund's lien, if any, being no greater than $50,000. If either condition was not satisfied, the settlement could be set aside and the matter returned to the calendar for a jury trial. The trial court was aware of this pact.

At the ensuing bench trial, the court found Grijalva's damages to be in excess of $10,000,000 and attributed 100% of the liability to Matalone Construction. Grijalva then filed an amended complaint seeking a judicial declaration that the Fund was not entitled to any lien against the settlement proceeds. Following oral argument, the trial judge concluded that a compensation lien attaches only to funds from culpable third parties whose conduct actually caused or contributed to the worker's injuries. Therefore, based on his earlier determination that Grijalva's employer was totally responsible for the accident, the judge ruled that the Fund did not possess a lien.

The court of appeals, relying in part on its earlier opinion in *Aitken v. Industrial Comm'n,* 173 Ariz. 300, 842 P.2d 1313 (App. 1992), reversed and held in a memorandum decision that the Fund should receive its full lien. Grijalva argues that this decision must be overruled because of our recent ruling in *Aitken v. Industrial Comm'n,* 183 Ariz. 387, 904 P.2d 456 (1995), vacating the court of appeals' opinion. We disagree. As previously indicated, the appellate court's decision was only partially based on *Aitken.* More importantly, however, the cases are distinguishable on their facts.

*Aitken* concerned the lien rights of a workers' compensation carrier following a contested third party trial that necessitated a determination of liability *and* damages, including the apportionment of fault among parties and nonparties as required by law. *See* A.R.S. § 12–2506. In that case, there was no advance agreement by the parties to pay or receive any amount of money. The present action, on the other hand, involves a pretrial attempt to settle a third party claim without approval of the compensation carrier, and a subsequent apportionment of fault apparently carried out for the sole purpose of impacting the carrier's lien rights.

■ We agree with the court of appeals' conclusion in its memorandum decision:

We find the trial court abused its discretion and acted without authority in this case. The parties' settlement of a disputed claim brought pursuant to subsection A of [A.R.S. § 23–1023] makes the proceeds subject to the Fund's lien. In addition, absent the statutorily required approval of any compromise of the lien amount by the Fund, neither the parties nor the trial court had any authority to take any action which would affect the Fund's subrogation rights under the statute. The trial court's ruling that Matalone was 100% at fault, and that both Western Lumber and International Paper were not negligent was, therefore, a meaningless gesture.

A.R.S. § 23–1023(C) specifically requires written approval of the Compensation Fund with respect to the "[c]ompromise of any claim [against a third party] by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided...." This privilege flows naturally from the Fund's subrogation rights. *Hornback v. Industrial Comm'n,* 106 Ariz. 216, 474 P.2d 807 (1970). Here, the parties attempted to obtain consent to a proposed settlement providing for a significantly reduced lien on the proceeds. The Fund rejected the proposal and countered with an offer of its own, which was also refused. Because no approval was obtained, the settlement in question was unauthorized.

Furthermore, the "summary trial" was of no real consequence. Its only apparent purpose was to diminish or entirely defeat the Fund's lien. We can ascertain no other explanation for the superfluous findings pertaining to damages in the signed judgment. The trial judge ruled in favor of the defense at the close of the evidence, and that should have ended the proceedings. There was no need to apportion fault or fix the amount of the claimant's damages. *Aitken* neither requires nor authorizes such a procedure.

Grijalva concedes that the case against defendants was a lost cause, but argues that this supports the trial court's denial of a lien to the Fund. Nothing in the statute or in our case law, however, decrees that when a third party claim is settled a lien attaches only if the defendant was actually culpable. Even if it could be said that the payments here were purely gratuitous, there is no basis upon which to conclude that they are exempt from the operation of A.R.S. § 23–1023. Moreover, common sense tells us that the defendants would not have paid hundreds of thousands of dollars in settlement if a favorable outcome could have been unerringly predicted. Cases having slim liability but catastrophic injuries are frequently settled to safeguard against the risk, however slight, of a large verdict. Indeed, it is uncertainty about the result that most often leads to settlement.

*Aitken* did not address rules governing the compromise of disputed third party claims. We agree with the Fund, however, that "artful contrivances" should not be permitted to reduce or extinguish legitimate lien rights. The fact that this settlement agreement was made "conditional" in no way changes the underlying nature of the transaction.[1] The parties' stipulations were clearly an attempt to transform a pretrial compromise into a post-trial disposition so that there would be some basis upon which to attack the compensation lien. This effort was unsuccessful.

If Grijalva is entitled to receive or has received settlement proceeds from International and Western, the Compensation Fund has a lien and/or a future credit against those proceeds. On the other hand, if the "conditional" nature of the settlement results in defendants getting their money back, or not having to pay at all, there is nothing against which to place a lien.

For the foregoing reasons, the trial court's ruling is reversed. The court of appeals

reached the correct result despite its partial reliance on an opinion that we have since vacated. Its memorandum decision is otherwise affirmed.

FELDMAN, C.J., MOELLER and MARTONE, JJ., and CORCORAN, J. (Retired), concur.

---

1. Similarly, the inclusion of a "summary judgment" in Western's favor as part of the final judgment signed by the court could not operate to alter the fact that the settlement with that defendant appears to have been completed well before the trial.