44 P.3d 178

Debbie STOUT, individually and on behalf of Logan Stout and the Estate of Todd Stout, and Pat Stout, Plaintiffs, Counterdefendants–Appellants,

v.

STATE COMPENSATION FUND, Defendant, Counterclaimant– Appellee.

No. 1 CA–CV 01–0079.

Court of Appeals of Arizona, Division 1, Department D.

April 25, 2002.

---

The Langerman Law Offices, By Richard W. Langerman, Phoenix, Attorneys for Appellants.

Sanders & Parks, P.C., By Mark G. Worischeck, Kathryn M. Epperson, Phoenix, Attorneys for Defendant–Appellee.

NOYES, Judge.

¶ 1 Todd Stout died from injuries received in an industrial accident in which he, his employer, and a third party shared fault. The third party ("Luna Tech") agreed to settle for its liability policy limits of $1,000,000. Because the State Compensation Fund had a lien that could one day exceed $1,000,000, the law required that the Stouts obtain the Fund's written approval of the settlement. After the Stouts asked for more of a lien compromise than the Fund was willing to grant, the Fund refused to approve the settlement. The Stouts then sued the Fund, seeking a judgment declaring that they could settle with the third party without the Fund's consent. The trial court granted summary judgment to the Fund, the Stouts appealed, and this court affirmed. *Stout v. State Compensation Fund ("Stout I")*, 197 Ariz. 238, 3 P.3d 1158 (App.2000), *review pending*.

¶ 2 In May 1998, while the appeal in *Stout I* was pending, the Stouts and Luna Tech entered into a high/low agreement that provided, in part, "Regardless of the judge's determination of damages, the parties agree that the maximum amount that Luna Tech shall pay is $1,000,000. Additionally, the parties agree that the minimum amount that the plaintiffs shall receive is $800,000." Because the parties also agreed that Luna Tech would pay up to $100,000 total to two non-Stout plaintiffs (for property damage), the agreement ensured that Luna Tech would pay the Stouts no less than $800,000 and no more than $900,000.

¶ 3 The Stouts and Luna Tech also executed a "Stipulation re: Trial Procedure," which provided that each side waived its right to trial by jury and its right to appeal, and that

each side would have four hours to present its case and one hour for opening statements and final arguments. The stipulation also provided, "Within thirty (30) days of the judge's determination of fault and damages, Luna Tech agrees to pay its proportionate share of the damages as determined by the judge subject to the high/low agreement of the parties."

¶ 4 Trial was in August 1998 before the Honorable B. Michael Dann. The parties waived the presence of a court reporter. After the trial, the court took the matter under advisement and later announced verdicts that apportioned 50% of the fault to Todd Stout, 25% to the employer, and 25% to Luna Tech. The court also awarded $819,323 in damages to Todd Stout's estate, $3,897,318 to Debbie Stout, $550,000 to Logan Stout, and $350,000 to Pat Stout, for a total award of $5,616,641. The trial court's minute entry verdict contained detailed findings and conclusions to explain its decisions regarding damages and fault. Judgment was entered in September 1998. Luna Tech then paid the non-Stout plaintiffs $100,000, and it paid the Stouts $900,000, which is in trust pending resolution of this litigation. The allocation of over $1,400,000 in fault to the employer (25% of $5,616,641) exceeded the Stout's $900,000 recovery from Luna Tech.

¶ 5 After the judgment had become final, the Stouts gave the Fund its first notice of the high/low agreement, the trial, and the judgment, and they told the Fund that its lien had been extinguished by virtue of *Aitken v. Industrial Commission*, 183 Ariz. 387, 904 P.2d 456 (1995), in which the Arizona Supreme Court declared, "We now hold that a carrier may assert a lien on a third party recovery only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages fixed by verdict in the action." *Id.* at 392, 904 P.2d at 461. The Fund continued to assert its lien rights.

¶ 6 In November 1998, the Stouts sued the Fund once again, seeking a judgment declaring that the Fund's lien was extinguished and a determination of the Fund's future credit. The Fund filed a counterclaim seeking a declaration that the Stouts' settlement with Luna Tech was unauthorized and that the Stouts' trial with Luna Tech was the sort of "artful contrivance" that does not defeat a workers' compensation lien, for policy reasons stated in *Grijalva v. Arizona State Compensation Fund*, 185 Ariz. 74, 77, 912 P.2d 1303, 1306 (1996) (holding that " 'artful contrivances' should not be permitted to reduce or extinguish legitimate lien rights").

¶ 7 The parties filed many motions for summary judgment. As relevant here, the trial court ruled that (1) the Fund's challenge to the judgment was not an impermissible collateral attack, (2) the high/low agreement was an unauthorized settlement pursuant to Arizona Revised Statutes ("A.R.S.") section 23–1023(C) (1995), (3) the trial was an artful contrivance pursuant to *Grijalva*, and (4) the Fund's lien attached to the entire $900,000 (plus interest) minus reasonable attorneys' fees and costs. We affirm.

## STANDARD OF REVIEW

¶ 8 On appeal from summary judgment we determine *de novo* whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). We view the evidence in the light most favorable to the party opposing the motion. *Hill Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990).

## DISCUSSION

1. *Collateral Attack*

¶ 9 In arguing that the Fund is bound by the *Stout v. Luna Tech* judgment, the Stouts rely on cases such as *Gilbreath v. St. Paul Fire & Marine Insurance Co.*, 141 Ariz. 92, 685 P.2d 729 (1984), and *Walker v. Davies*, 113 Ariz. 233, 550 P.2d 230 (1976), which hold that a judgment cannot be collaterally attacked, even for fraud, unless it is "void on its face."

¶ 10 The cited cases, however, involve attacks on a judgment rendered in a prior proceeding in which the attacker was either a party to the prior proceeding or closely asso-

ciated with such a party.[1] In contrast, the Fund was not a party to the *Stout v. Luna Tech* action, and it had no duty to defend any party in that action. The question arises, however, whether sufficient commonality of interest existed between the Fund and a party to the *Stout v. Luna Tech* litigation that the Fund's interests were adequately represented there.

¶ 11 In the typical third-party action arising out of an industrial accident, a commonality of interest does exist between the plaintiff and the workers' compensation carrier, for the plaintiff has every incentive to maximize the percentage of fault allocated to the third-party defendant. In such cases, the plaintiff necessarily has every incentive to *minimize* the percentage of fault allocated to the employer, for any fault assigned to the employer will typically reduce that assigned to the third-party defendant.

¶ 12 The present case, however, was an atypical third-party action because of the following facts: the employee, the employer, and a third party were all at fault; the relative percentages of fault were fairly debatable; the plaintiffs' damages were in the $5,000,000 range; the third party agreed to settle for its $1,000,000 policy limits; and the Fund's lien could exceed $1,000,000. Given these unusual facts and the *Aitken* rule, the Stouts had every incentive to *maximize* the percentage of fault allocated to the employer, and Luna Tech had no incentive to oppose that effort. Thus, the Stouts' trial with Luna Tech was an exercise that was primarily designed to finesse the Fund's settlement approval rights and extinguish its lien rights, with no timely notice to the Fund. Under such circumstances, the Fund had no commonality of interest with any party to the *Stout v. Luna Tech* litigation, and the Fund is not precluded from attacking the resulting judgment.

### 2. *High/Low Agreement*

■ ¶ 13 Pursuant to A.R.S. § 23–1023(C), "compromise of any [third-party] claim by the employee or his dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund." The phrase "at an amount less than ... benefits provided for" refers to the amount of benefits that *could* be paid. *Hornback v. Indus. Comm'n*, 106 Ariz. 216, 220, 474 P.2d 807, 811 (1970); *Macaluso v. Indus. Comm'n*, 181 Ariz. 447, 448, 891 P.2d 914, 915 (App.1995). Therefore, the carrier's written approval must be obtained even when the settlement exceeds the amount of benefits paid through the date of settlement, if future benefits payable may exceed the settlement, which is the case here.

¶ 14 The Stouts and Luna Tech entered into a high/low agreement that settled the case between the Stouts and Luna Tech, while letting the trial judge decide whether the settlement would be $800,000, $900,000, or somewhere in between. This settlement agreement required the Fund's prior approval pursuant to A.R.S. § 23–1023(C).

### 3. *The Trial*

■ ¶ 15 The Fund contends that the Stouts' high/low agreement and stipulated trial procedures were an "artful contrivance" like the one in *Grijalva* and, therefore, that the resulting judgment has no effect on the Fund's lien. 185 Ariz. at 77, 912 P.2d at 1306.

¶ 16 The trial court agreed, and it granted summary judgment to the Fund based on the totality of the following circumstances: (1) the Stouts took the "unusual and unnatural position" of emphasizing employer fault at trial, arguing that the employer was 33–1/3% to 50% at fault, thus seeking to shift liability

---

1. *See Gilbreath*, 141 Ariz. at 93, 97, 685 P.2d at 730, 734 (prohibiting insurer from collaterally attacking judgment against the insured when insurer failed to fulfill duty to provide a defense); *Walker*, 113 Ariz. at 235, 550 P.2d at 232 (holding that the Walkers could not attack a prior judgment to which they were parties); *Sch. Dist. No. 1 v. Snowflake Union High Sch. Dist.*, 100 Ariz. 389, 390–91, 414 P.2d 985, 986–87 (1966)

(applying doctrine of res judicata based on close identity of parties and adequate representation of their interests); *Cox v. MacKenzie*, 70 Ariz. 308, 311–12, 219 P.2d 1048, 1051 (1950) (prohibiting creditor who filed claim in probate proceeding from collaterally attacking judgment entered in that proceeding); *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 200, 593 P.2d 948, 950 (App.1979) (similar holding to *Gilbreath*).

from the third party to the employer, from whom they could collect no damages; (2) the high/low agreement "drastically changed" the parties' motivation to "forthrightly argue and present evidence in support of their various theories of liability and damages"; (3) the Stouts waived a jury and agreed that the judgment was non-appealable; and (4) the Stouts failed to give the Fund notice of the trial, and they waived the presence of a court reporter.

¶ 17 The Stouts argue that *Grijalva* only applies to trials in which the sole purpose is to determine the employer's fault, and, the argument continues, the *Stout v. Luna Tech* trial was a true contest within the range of the high/low agreement. Accepting that latter point for purposes of argument still leads to the conclusion that this trial was obviously not a true contest as regards employer fault.

¶ 18 We recognize that the Stouts' attorneys had a dilemma here. *Aitken* provides claimants with certain rights, and the *Aitken* issue in this case is of enormous consequence to the Stouts, but Arizona law provides no rules for how a claimant and the carrier are to resolve an *Aitken* issue when that is the major or only issue in dispute.

¶ 19 The Stouts had reason to believe that the Fund's lien would be extinguished by proper application of the *Aitken* rule, and they tried to litigate the matter of employer fault, with the cooperation of Luna Tech. There was nothing wrong with that objective. But where the Stouts went inexcusably wrong, in our opinion, was in hiding their efforts from the Fund until they thought it was too late for the Fund to contest those efforts. If the Stouts had given candid and timely notice to the Fund of the high/low agreement and the trial, they would have had a much better argument that the result of the trial should be binding on the Fund, whether it chose to participate or not.

¶ 20 Until the legislature provides specific guidance on how to resolve an *Aitken* issue that is the major or only issue in dispute, counsel will have no specific direction on how to proceed in a case such as this. They do, however, have general direction from the following recent pronouncement by the Arizona Supreme Court: "We hold today, as strongly as possible, that any agreement that has the *potential* of affecting the manner in which a case is tried is one that may encourage wrongdoing and must therefore be disclosed to the trial judge and all litigants in the case." *In re Alcorn & Feola*, 202 Ariz. 62, 69, ¶ 28, 41 P.3d 600, 607 (2002). In a case such as the present one, that kind of agreement must be disclosed to the carrier, too. In deciding whether an agreement needs to be disclosed, counsel might also keep in mind another pronouncement from the same supreme court opinion: "[W]hile we may not be able to define a sweetheart deal, we know enough to recognize one when we see it." *Id.* ¶ 37.

¶ 21 The Stouts express no remorse for keeping the agreement and trial a secret from the Fund until after judgment was final. The Stouts argue that the court records were public and the Fund knew about the Luna Tech lawsuit, thus suggesting that it was up to the Fund to inform itself about developments in the lawsuit. That argument fails the *Alcorn* test, for reasons previously explained, and it also ignores the Stouts' explicit duty to provide such information to the Fund. Ariz. Admin. Code R20–5–119(B) (2000) ("If a lawsuit is filed against a third party, it shall be the duty of the employee or his attorney to provide the workers' compensation carrier with copies of the pleadings and all offers of settlement.").

### 4. Lien Reimbursement

¶ 22 We now discuss whether the lien reimbursement is governed by A.R.S. § 23–1023(C) or *Stout I. See Stout I*, 197 Ariz. at 243–44, ¶¶ 26–29, 3 P.3d at 1163–64. Under the statute, the Fund's lien attaches to the "amount actually collectable," which is defined as "the total recovery less the reasonable and necessary expenses, including attorneys' fees, actually expended in securing such recovery." A.R.S. § 23–1023(C).

¶ 23 The Stouts argue that they had a pretrial agreement to distribute the proceeds according to the damage awards in the *Stout v. Luna Tech* judgment. Thus, the Stouts contend, the Fund's lien should attach to the individual recoveries in accordance with

*Stout I* principles. *Stout I,* 197 Ariz. at 244, ¶¶ 27–29, 3 P.3d at 1164. This argument fails.

¶ 24 Following entry of judgment in *Stout v. Luna Tech* in September 1998, Luna Tech sent the Stouts a $900,000 check. The *Stout v. Luna Tech* judgment awarded individual recoveries to the Stouts, but Luna Tech did not pay the Stouts pursuant to that judgment; it paid them (and two non-parties) pursuant to the high/low agreement. Accordingly, the lien reimbursement attaches to "the amount actually collectable" by the Stouts pursuant to the high/low agreement.

**CONCLUSION**

¶ 25 The judgment is affirmed.

CONCURRING: PHILIP HALL, Presiding Judge and WILLIAM F. GARBARINO, Judge.