47 P.3d 1142

**William and Sandra WEBER, husband and wife, Plaintiffs/Appellees,**

v.

**TUCSON ELECTRIC POWER COMPANY, an Arizona corporation, Defendant/Appellant.**

No. 2 CA–CV 2001–0117.

Court of Appeals of Arizona, Division 2, Department B.

May 30, 2002.

Gabroy, Rollman & Bossé, P.C., by John Gabroy and Richard Brown, Tucson, for plaintiffs/appellees.

Gust Rosenfeld P.L.C., by Roger W. Frazier, Tucson, for defendant/appellant.

*OPINION*

DRUKE, J.

¶1 William Weber was seriously injured while employed by Tucson Electric Power Company (TEP) and began receiving workers' compensation benefits. In a related third-party action, he reached a settlement with one of the defendants before proceeding to trial against the remaining defendant, who had named the other defendant and TEP as nonparties at fault. The jury awarded Wil-

liam $2 million in damages and found TEP twenty-five percent at fault. TEP asserted a lien against the settlement pursuant to A.R.S. § 23–1023(C). This appeal requires us to decide whether, as TEP contends, it is entitled to recover the full amount of its lien against the settlement or whether, as the trial court ruled, the lien is subject to reduction based on the equitable apportionment rule adopted by our supreme court in *Aitken v. Industrial Commission,* 183 Ariz. 387, 904 P.2d 456 (1995). For the reasons that follow, we affirm the trial court's ruling.

¶ 2 William's injury occurred after the hydraulic boom controlling the bucket in which he was working collapsed because of a metallurgical failure, throwing him from the bucket and impaling him on a metal bracket of the TEP truck. While receiving workers' compensation benefits from TEP, a self-insured employer, William and his wife filed a third-party negligence and product liability action against a number of entities, including W.H. Pingree Company, the seller of the boom, and Southwest Field Services, Inc., the company that had maintained and repaired it. Without TEP's consent, the Webers reached a settlement with Pingree for $950,000. By that time, TEP had paid William approximately $65,000 in workers' compensation benefits.

¶ 3 TEP then asserted a lien on the settlement proceeds, based on § 23–1023(C). The relevant part of the statute provides that if an injured employee files a third-party action against another person whose negligence or wrong caused the employee's on-the-job injury,

> the insurance carrier or other person liable to pay the [employee's] claim shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid.... The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case. Compromise of any claim by the employee or his dependents at an amount less than the compensation

and medical, surgical and hospital benefits provided for shall be made only with written approval of the compensation fund, or of the person liable to pay the claim.

In response to TEP's lien, the Webers contended that because the jury had determined that William's damages were $2 million and because the jury had found TEP twenty-five percent at fault, the lien should be reduced by $500,000. When TEP disagreed, the Webers sought a declaratory judgment that the lien was subject to the reduction. After both parties filed motions for summary judgment, the trial court granted the Webers' motion, finding that the equitable apportionment rule of *Aitken* applied. This appeal by TEP followed. We review de novo a trial court's grant of summary judgment. *Strojnik v. General Ins. Co. of Am.,* 201 Ariz. 430, 36 P.3d 1200 (App.2001).

¶ 4 We first examine *Aitken* to determine its applicability. There, the injured employee was awarded benefits after filing a workers' compensation claim. She also filed a negligence action against the construction company that had caused her injury. Following a trial, the jury awarded her almost $320,000 in damages and apportioned the fault as follows: sixty-five percent to the construction company, twenty-five percent to the employer, and ten percent to the employee. From the reduced sum the employee collected from the construction company, she reimbursed the employer's compensation carrier the amount of workers' compensation benefits she had already received. The carrier then claimed it had a lien against the balance of her damages for future compensation it expected to pay. The employee challenged the lien as excessive, in light of the jury's apportionment of twenty-five percent of the fault to the employer.

¶ 5 The supreme court noted that, before the legislature adopted the Uniform Contribution Among Tortfeasors Act, A.R.S. §§ 12–2501 through 12–2509, "a literal reading of the lien statute did not detract from the overall purpose of the workers' compensation scheme, which is to protect injured employees." *Aitken,* 183 Ariz. at 390, 904 P.2d at 459. But, with the abrogation of joint and several liability and the corresponding ability

of a third-party tortfeasor to name an employer as a nonparty at fault, *see Dietz v. General Electric Co.,* 169 Ariz. 505, 821 P.2d 166 (1991), the court concluded that the appropriate interpretation of the lien statute required achieving "a reasonable balance between the rights of employer and employee, consistent with the underlying goals of the compensation scheme." *Aitken,* 183 Ariz. at 392, 904 P.2d at 461. Accordingly, the court held "that a carrier may assert a lien on a third party recovery only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages fixed by verdict in the action." *Id.*

¶6 But, as TEP points out, *Aitken* involved a lawsuit in which the liability of all parties was adjudicated at trial. Thus, the supreme court necessarily did not address the application of the equitable apportionment rule where one of the third-party tortfeasors settles with the injured employee. And, relying on *Grijalva v. Arizona State Compensation Fund,* 185 Ariz. 74, 912 P.2d 1303 (1996), and *Stout v. State Compensation Fund,* 197 Ariz. 238, 3 P.3d 1158 (App.2000), TEP maintains that *Aitken* does not apply to a pretrial settlement with a party who does not go to trial. Although TEP is correct that *Grijalva* and *Stout* involved pretrial settlements, they do not directly address the precise issue raised here.

¶7 In *Grijalva,* an employee was seriously injured after he fell from a roof. He sued the manufacturer and distributor of a board that had broken and later settled his case against the distributor. The employee refused the manufacturer's offer to settle its case because of concern about the State Compensation Fund's lien against the proceeds. His attorney and the trial judge then negotiated a settlement that included conducting a summary trial. At its conclusion, the judge found that the employee's damages exceeded $10 million and that the employer was one hundred percent at fault. Based on the court's findings, the employee contended the Fund had no lien against his settlement proceeds, and the trial judge agreed.

¶8 The court of appeals reversed the trial court in a memorandum decision, holding that the Fund should receive its full lien. On review, the supreme court agreed, stating that " 'artful contrivances' should not be permitted to reduce or extinguish legitimate lien rights." *Id.* at 77, 912 P.2d at 1306. The supreme court also noted that the "only apparent purpose [of the summary trial] was to diminish or entirely defeat the Fund's lien," pointing out that, once the trial judge had determined that neither the manufacturer nor the distributor had been at fault, there was no need to determine the amount of the employee's damages or to apportion fault. *Id.* at 76, 912 P.2d at 1305.

¶9 In *Stout,* the other case relied on by TEP, the Fund refused to approve the proposal of the third-party tortfeasor to settle with the deceased employee's widow for policy limits. Among the issues raised on appeal, the widow asserted that *Aitken* should apply to all cases resolved by settlement, regardless of whether the employer's fault is judicially determined. Division One of this court rejected this assertion, finding that the "considerations that led to the holding of *Aitken* are not present in a settlement ... like the one presented here." *Stout,* 197 Ariz. 238, ¶14, 3 P.3d 1158, ¶14. The court observed that, in the proposed settlement, "there was no reduction of the settlement amount for employer fault because the amount of damages was not determined at trial nor was there any judicial determination of employer fault to reduce those damages." *Id.*

¶10 This case thus presents a hybrid of *Aitken, Grijalva,* and *Stout.* Although the Webers settled a portion of their case against one third-party tortfeasor, they also proceeded to trial against another. And, unlike the summary trial in *Grijalva,* TEP does not assert that the twelve-day trial against Southwest was a sham or collusive proceeding that resulted in extraneous and irrelevant findings on damages or the apportionment of fault. Indeed, the Webers insist, and TEP does not dispute, that they vigorously argued that TEP was not at fault for William's injuries. In fact, any determination of TEP's fault would have reduced the amount of damages the Webers could recover from Southwest. And, unlike in *Stout,* there is no claim that the Webers' settlement with Pingree

was arbitrarily based on an insurance policy limit. Moreover, the settlement here did not dispose of the entire case, as the proposed settlement in *Stout* would have done. For these reasons, we find this case distinguishable from *Grijalva* and *Stout* and more like *Aitken,* to which the equitable apportionment rule applies.

¶ 11 TEP nonetheless claims the jury's allocation of fault to TEP has no legal effect on the Webers' settlement proceeds from Pingree and, therefore, should have no effect on TEP's lien. Although TEP is correct that the settlement proceeds have not been reduced by the allocation of fault against TEP, William's damages have, in fact, been reduced by the fault allocation. The jury found his total damages were $2 million; Pingree's share of those damages, according to the jury's allocation of sixty percent fault to Pingree, was $1.2 million. Had the jury not found TEP twenty-five percent at fault, William's recovery from Southwest would have been greater; therefore, his recovery of damages in the entire case should not be further reduced by TEP's lien. As the court observed in *Aitken:* "[T]he lien statute acts to promote fairness among all parties. That goal is not served by allowing 'an employer to benefit from his own wrong, at the expense of the injured worker,' nor is such a scenario 'consistent with the principles of comparative fault.' " 183 Ariz. at 392, 904 P.2d at 461, *quoting Clark v. Pacificorp,* 118 Wash.2d 167, 822 P.2d 162, 174 (1991).

¶ 12 Finally, TEP argues that its lien against the Webers' settlement proceeds from Pingree should not be reduced by the jury's allocation of fault to TEP because the Webers failed to obtain TEP's consent to the settlement. In rejecting this argument, the trial court noted that § 23–1023(C) provides that a carrier must approve any compromise of a claim for an amount "less than the compensation and medical, surgical and hospital benefits provided"; that the Webers had settled with Pingree for $950,000; and that TEP's lien and future credit totaled $496,000, an amount "significantly less" than the settlement. Because it is undisputed that TEP paid William approximately $65,000

in benefits and because TEP did not produce any evidence or argue that its future credit might exceed $496,000, we find no error in the trial court's ruling. *Cf. Stout v. State Compensation Fund,* 202 Ariz. 300, 44 P.3d 178 (App.2002) (holding that carrier's consent required if past and future benefits might exceed settlement).

¶ 13 Accordingly, we affirm the trial court's application of the equitable apportionment rule to TEP's lien and, therefore, the judgment entered in favor of the Webers.

CONCURRING: PHILIP G. ESPINOSA, C.J., JOSEPH W. HOWARD, P.J.