IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TWIN CITY FIRE INSURANCE COMPANY,
*Plaintiff/Counter-Defendant/Appellee,*

*v.*

GRACIELA LEIJA,
*Defendant/Counter-Claimant/Appellant.*

No. 1 CA-CV 16-0174
FILED 8-31-2017

Appeal from the Superior Court in Maricopa County
No.  CV2012-004506
The Honorable Michael J. Herrod, Judge
The Honorable J. Richard Gama, Judge, *Retired*

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART**

COUNSEL

Jones, Skelton & Hochuli, PLC, Phoenix
By Donald L. Myles, Jr., Jefferson T. Collins, Lori L. Voepel
*Counsel for Plaintiff/Counter-Defendant/Appellee*

Robbins & Curtin, PLLC, Phoenix
By Joel B. Robbins, Anne E. Findling
*Co-Counsel for Defendant/Counter-Claimant/Appellant*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Defendant/Counter-Claimant/Appellant*

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Patricia K. Norris and Judge Jay M. Polk joined.[1]

**J O H N S E N**, Judge:

**¶1** Under Arizona law, an injured worker who accepts workers' compensation benefits cannot sue the employer. The worker may sue others responsible for his or her injuries, but the law grants the employer's insurance carrier a lien against any recovery. We hold in this case that when a worker settles a claim against a third party for less than the limits of the third party's insurance, the worker may obtain a judicial determination of whether the carrier's lien should be reduced to account for the employer's comparative fault.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** Victor Leija was a window washer. He plunged three stories to his death when a scaffold he was trying to erect atop a three-story building collapsed and fell to the ground. His employer's workers' compensation carrier, Twin City Fire Insurance Company, accepted the claim and pays monthly benefits of $1,857 to Leija's widow and children. Over time, those payments will total some $575,000.

**¶3** Leija's family sued several third parties, including the City of Glendale, which owns the building from which Leija fell; the building's property manager and maintenance company; the company that furnished the scaffold; and the company that fabricated it. The Leijas alleged negligence by each of the defendants caused the scaffold to fall; in the case of the City, they alleged breach of a duty to provide anchors to secure the scaffold to the roof of the building. The City and the other defendants identified Leija's employer as a nonparty at fault. As evidence, they pointed to citations the state Division of Occupational Safety and Health issued the employer for failing to repair a defect in the scaffold, failing to properly

---

1       The Honorable Patricia K. Norris, Retired Judge of Court of Appeals, Division One, and the Honorable Jay M. Polk, Judge of the Arizona Superior Court, have been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

secure the scaffold to the building and failing to make sure Leija wore a safety harness.

¶4 The Leijas eventually settled with all the defendants and recovered a total of $1,600,000. All but one paid the limits of their insurance coverage. The exception was the City of Glendale, which was an additional insured on two of the other defendants' policies. The City settled the Leijas' claim without having to draw on its own insurance coverage, which was ample. Twin City did not object to any of the settlements, but asserted a right to fully enforce its lien against the settlement proceeds. It sought reimbursement for what it had paid the Leijas already and full credit against future payments. The Leijas rejected Twin City's demand, arguing the carrier's lien should be reduced due to the employer's comparative fault in the accident.

¶5 After negotiations failed, Twin City filed a complaint for "enforcement of lien." The Leijas counterclaimed, alleging Twin City breached its duty of good faith and fair dealing by refusing to reduce its lien to account for employer fault. They also alleged Twin City breached a promise to reevaluate the lien amount after all the settlements were finalized. In the alternative, the Leijas asked the superior court to set a trial to establish the amount of the lien.

¶6 Both sides eventually moved for summary judgment. The court rejected the Leijas' contention that a workers' compensation carrier owes a duty of good faith to compromise its lien to account for the employer's comparative fault, but found there was a genuine issue of material fact about whether Twin City breached a promise to consider compromising its lien. The court also ruled that "a separate action after compromise of the third-party claim is not the appropriate vehicle to allocate fault to the workers['] compensation carrier's insured."

¶7 After further discovery, Twin City once again moved for summary judgment. This time, the superior court granted the motion, finding no proof that Twin City promised to compromise its lien. The court also denied the Leijas' motion for leave to add claims against Twin City's parent company, The Hartford Financial Services Group, Inc.

3

¶8　　　　We have jurisdiction of the Leijas' timely appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1) (2017) and -120.21(A)(1) (2017).[2]

## DISCUSSION

### A.　　Workers' Compensation Liens and Equitable Apportionment.

¶9　　　　Under A.R.S. § 23-1023(A) (2017), a worker injured on the job may sue a third party whose "negligence or wrong" contributed to the worker's injury.  In the event the worker is killed, the worker's dependents may sue.  *Id.*  The worker or the dependents must notify the employer's workers' compensation insurance carrier of the suit, and the carrier may intervene to protect its interests.  A.R.S. § 23-1023(C).  The statute further grants a lien to the carrier "on the amount actually collectable from the [third-party defendant] to the extent of such compensation and medical, surgical and hospital benefits paid."  A.R.S. § 23-1023(D).  Finally, the carrier must approve any proposed settlement in an amount less than the benefits the carrier has paid.  *Id.*

¶10　　　　When joint-and-several liability was the general rule in Arizona, § 23-1023 did not impair the purpose of the statutory workers' compensation scheme, which is to protect injured workers.  *Aitken v. Indus. Comm'n*, 183 Ariz. 387, 390 (1995).  "Those who paid compensation obtained liens on 'total' recoveries from third party tortfeasors who were, under the law existing at the time, responsible for *all* damages regardless of how big or small their respective portions of liability might have been."  *Id.*  Even after satisfying the carrier's lien, an injured worker "received a full measure of damages from third parties whose conduct contributed to the result."  *Id.*

¶11　　　　As *Aitken* pointed out, however, after Arizona largely abrogated joint-and-several liability in favor of comparative fault, the lien statute "may work an injustice" on injured workers.  *Id.*  Under A.R.S. § 12-2506(B) (2017), defendants sued by an injured worker can name the worker's employer as a nonparty at fault, with the result that even before application of the lien, the worker's damages may be reduced to account for the employer's comparative fault.  *Aitken*, 183 Ariz. at 390.  Because a worker who elects to receive worker's compensation benefits cannot sue the employer, literal application of § 23-1023(D) in such a situation unfairly penalizes the worker: "[W]ithout an equitable adjustment or

---

[2]　　　　Absent material revision after the relevant date, we cite a statute's current version.

apportionment, employers and their carriers will continue to obtain full liens against third party recoveries even where those awards have been effectively reduced by virtue of the employers' own fault." *Aitken*, 183 Ariz. at 190.

**¶12** *Aitken* was such a case: An injured worker sued a third party and prevailed, but the worker's recovery was reduced because the jury found the employer was 25 percent at fault. *Id.* at 388-89. Pursuant to statute, an administrative law judge ruled the employer's carrier was entitled to be reimbursed from the judgment for the full amount of its lien, and the court of appeals affirmed. *Id.* at 389. In reversing, the supreme court pointed out that the purpose of § 23-1023 is "to promote fairness among all parties," a "goal [that] is not served by allowing 'an employer to benefit from his own wrong, at the expense of the injured worker,' nor is such a scenario 'consistent with the principles of comparative fault.'" *Aitken*, 183 Ariz. at 392 (quoting *Clark v. Pacificorp*, 822 P.2d 162, 174 (Wash. 1991)). The court further explained:

> There is no indication that [§ 23-1023] was intended to result in a windfall for any party, be it the employee, employer, or insurance carrier. We should therefore continue to interpret it in a manner that achieves the legislative objectives of distributing responsibility according to fault and avoiding double recovery while ensuring full and fair recompense. Because any other interpretation "would be at the expense of the injured workman," we conclude that the lien and any future credit should apply only to the extent that compensation benefits paid exceed the negligent employer's proportionate share of the total damages awarded in the third party action. In other words, the employee should not be forced to endure the combined effect of first having his or her award reduced by reason of the employer's fault, and thereafter having to satisfy a lien against this diminished recovery in favor of the employer and its carrier to the full extent of compensation benefits provided.

*Id.* (citation omitted) (quoting *Taylor v. Delgarno*, 667 P.2d 445, 450 (N.M. 1983) (Payne, C.J., & Sosa, J., dissenting)).

**¶13** Less than a year after *Aitken*, the supreme court again addressed equitable apportionment of a workers' compensation lien. In *Grijalva v. Arizona State Compensation Fund*, 185 Ariz. 74, 75 (1996), an injured worker accepted benefits, then sued two third parties for his

injuries. He settled with one, agreeing to entry of judgment in that defendant's favor. *Id.* at 75. After the other defendant offered to settle and the carrier declined to compromise its lien, the superior court ruled that the lien attached "only to funds from culpable third parties whose conduct actually caused or contributed to the worker's injuries." *Id.* at 76. The superior court then conducted a "summary trial," after which it found the employer was 100 percent at fault and ruled the carrier had no lien against the settlements. *Id.* at 75-76.

¶14 The supreme court reversed, rejecting the superior court's ruling and the outcome of the summary trial, which effectively exonerated defendants that had paid substantial sums in settlement. *Id.* at 77 ("[C]ommon sense tells us that the defendants would not have paid hundreds of thousands of dollars in settlement if a favorable outcome could have been unerringly predicted."). Acknowledging that "*Aitken* did not address rules governing the compromise of disputed third party claims," the supreme court rejected the procedure the parties had constructed as an "artful contrivance" intended "to reduce or extinguish legitimate lien rights." *Id.*

¶15 Another settlement was at issue in *Stout v. State Comp. Fund* (*Stout I*), 197 Ariz. 238, 239-40, ¶ 3 (App. 2000). There, a defendant agreed to pay its insurance policy limits to the widow of a deceased worker. The employer's carrier was willing to forego a portion of its lien against sums it had already paid, but maintained it was entitled to full credit against future payments. The widow asked the court to allow her to settle over the carrier's objection; she also asked the court to reduce the carrier's lien. *Id.* at 240, ¶ 4. After the superior court granted summary judgment to the carrier, this court affirmed. Citing *Boy v. Fremont Indemnity Co.*, 154 Ariz. 334 (App. 1987), we held that when an injured worker settles a claim with a third party, the workers' compensation carrier owes no duty to offer to compromise its lien against the settlement to account for the employer's comparative fault. *Stout I*, 197 Ariz. at 242-43, ¶ 21. We noted *Aitken* held that a carrier may enforce its lien "only to the extent that" it has paid more than "the employer's proportionate share of the total damages fixed by verdict in the action." *Id.* at 241, ¶ 11 (quoting *Aitken*, 183 Ariz. at 392). We concluded the "policy concerns of *Aitken*" do not apply when a worker settles his or her claim "at [insurance] policy limits and there is no evidence that employer fault affected the offer to settle at policy limits." 197 Ariz. at 242, ¶ 15.

¶16 While the appeal in *Stout I* was pending, the worker's widow and the third-party defendant entered into a high/low settlement

agreement for less than the defendant's policy limits and agreed to have the superior court try damages and the employer's comparative fault in a summary trial. *Stout v. State Comp. Fund* (*Stout II*), 202 Ariz. 300, 301-02, ¶¶ 2-3 (App. 2002). After hearing a few hours of evidence, the superior court found the employer 25 percent at fault. *Id.* at 302, ¶ 4. Only after judgment was entered did the parties inform the carrier of their high/low agreement, the trial and the judgment. *Id.* at ¶ 5. On appeal from summary judgment in favor of the carrier in a subsequent declaratory judgment proceeding, the carrier argued the high/low agreement and the stipulated summary trial were an "artful contrivance" of the sort that *Grijalva* had rejected. *Id.* at ¶ 6.

**¶17**        Addressing the parties' respective contentions, we observed that *Aitken* did not lay out a clear path for an injured worker in such a situation:

> We recognize that the Stouts' attorneys had a dilemma here. *Aitken* provides claimants with certain rights, and the *Aitken* issue in this case is of enormous consequence to the Stouts, but Arizona law provides no rules for how a claimant and the carrier are to resolve an *Aitken* issue when that is the major or only issue in dispute.

> The Stouts had reason to believe that the [carrier's] lien would be extinguished by proper application of the *Aitken* rule, and they tried to litigate the matter of employer fault, with the cooperation of [the settling defendant]. There was nothing wrong with that objective. But where the Stouts went inexcusably wrong, in our opinion, was in hiding their efforts from the [carrier] until they thought it was too late for the [carrier] to contest those efforts. If the Stouts had given candid and timely notice to the [carrier] of the high/low agreement and the trial, they would have had a much better argument that the result of the trial should be binding on the [carrier], whether it chose to participate or not.

> Until the legislature provides specific guidance on how to resolve an *Aitken* issue that is the major or only issue in dispute, counsel will have no specific direction on how to proceed in a case such as this. They do, however, have general direction from the following recent pronouncement by the Arizona Supreme Court: "We hold today, as strongly as possible, that any agreement that has the *potential* of affecting the manner in which a case is tried is one that may

> encourage wrongdoing and must therefore be disclosed to the trial judge and all litigants in the case."

*Id.* at 304, ¶¶ 18-20 (alteration in original) (citations omitted) (quoting *In re Alcorn & Feola*, 202 Ariz. 62, 70, ¶ 28 (2002)). Because the summary trial the superior court had conducted at the request of the settling parties was "obviously not a true contest as regards employer fault," we affirmed the judgment in favor of the carrier, holding it was entitled to reimbursement to the full extent of its lien. 202 Ariz. at 304, 305, ¶¶ 17, 24.

¶18 After *Stout II*, however, we made clear that a carrier's lien on a settlement may be apportioned under *Aitken* as long as the worker's damages and the employer's comparative fault are determined in a fair proceeding. In *Weber v. Tucson Electric Power Co.*, 202 Ariz. 504, 504 (App. 2002), an injured worker settled with one defendant but went to trial against another. Using the jury's damage verdict and finding of the employer's comparative fault, the superior court reduced the carrier's lien against the proceeds of the settlement with the defendant that did not go to trial. *Id.* at 505, ¶ 3. We affirmed, noting that the carrier did not argue the trial "was a sham or collusive proceeding." *Id.* at 506-07, ¶ 10.

¶19 Here, in contrast to the circumstances in *Grijalva* and *Stout II*, the Leijas did not settle their claims over the carrier's objection, nor do they seek to reduce the lien based on the outcome of a sham proceeding contrived to increase the employer's comparative fault. Moreover, unlike in *Stout I*, the settlements the Leijas negotiated did not exhaust the applicable insurance (several layers of the City of Glendale's policies were left untouched). Given the safety citations issued to the employer after the scaffold's collapse, *supra* ¶ 3, estimations of the employer's comparative fault undoubtedly affected the amount the Leijas were able to recover in settlement.

¶20 In these circumstances, the fact that the Leijas settled their claims rather than try them to a verdict does not preclude equitable apportionment under *Aitken*. Twin City cites language from that case holding that a carrier may enforce its lien "only to the extent that the compensation benefits paid exceed the employer's proportionate share of the total damages *fixed by verdict* in the action." *Aitken*, 183 Ariz. at 392 (emphasis added). But we do not read the supreme court's reference to a jury verdict in the quoted passage as limiting application of the equitable principles that underlay that decision to cases in which the worker tries his or her claims to a verdict. The rule of *Aitken* is derived from the purpose of the worker's compensation lien, which the supreme court stated is to

"promote fairness among all parties." *Id.* "We should therefore continue to interpret it in a manner that achieves the legislative objectives of distributing responsibility according to fault and avoiding double recovery while ensuring full and fair recompense." *Id.* When the benefits payable by the carrier do not exceed the employer's proportionate share of the damages, application of § 23-1023(D) works the same injustice on a worker who settles his or her claim as it does on a worker who tries the claim to a jury verdict. *See Aitken*, 183 Ariz. at 390. In both situations, the worker is entitled to "the fullest available recovery without double recovery." *Id.* at 393.

**¶21** Nor does *Stout I* preclude application of equitable apportionment to any settlement by an injured worker. *See Weber*, 202 Ariz. at 506-07, ¶ 10; *supra* ¶ 18. There was no evidence in *Stout I* that the settlement there had taken the employer's comparative fault into account; as negotiated, the defendant would have paid its policy limits. 197 Ariz. at 242, ¶ 15. That is not true here, where the settlement with Glendale did not touch multiple layers of coverage and the record contains significant evidence of employer fault. *See id.* at 241, ¶ 14 ("The goal of the equitable apportionment rule is to allow a fair recovery for an employee whose award against a third party is reduced by both the proportion of employer fault and the carrier's lien.").

**¶22** Implicitly acknowledging the case authorities barring use of a sham proceeding to determine the amount by which a carrier's lien should be reduced under *Aitken*, the Leijas urge this court to direct the superior court to set a trial "for the purpose of establishing damages and employer fault" so that Twin City's lien can be equitably apportioned. Twin City argues such a trial necessarily would be a sham because the Leijas, who sought to minimize the employer's comparative fault in their case against the third parties, would take the opposite position in an apportionment proceeding. *See Aitken*, 183 Ariz. at 392. We see no logic in Twin City's contention that the change in the Leijas' litigation position concerning employer fault would render the trial an impermissible "artful contrivance" like those in *Grijalva* and *Stout II*. On remand, Twin City will be free to offer otherwise admissible evidence aimed at minimizing the employer's comparative fault, presumably including, *inter alia*, evidence disclosed in the Leijas' litigation with the third parties. So long as properly motivated parties are accorded a fair adversarial proceeding conducted in accordance with due process, the concerns of a sham proceeding are avoided.

**¶23** For these reasons, the superior court erred by denying the Leijas' request for a trial to equitably apportion Twin City's lien. Because

the parties did not address the specifics of such a proceeding (including, for example, whether damages and the employer's comparative fault should be determined by the court or by a jury), we do not address those issues, and leave them to be resolved by the superior court on remand.

**B.      Claims for Breach of the Covenant of Good Faith and Fair Dealing and Breach of Contract.**

**¶24**      The Leijas also appeal the superior court's entry of summary judgment in favor of Twin City on their claims for breach of the covenant of good faith and fair dealing and breach of contract.

**¶25**      We review *de novo* the grant of a motion for summary judgment, *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007), viewing the facts and inferences in a light most favorable to the party against whom summary judgment was entered, *Prince v. City of Apache Junction*, 185 Ariz. 43, 45 (App. 1996).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).

**1.      Alleged breach of the covenant of good faith and fair dealing.**

**¶26**      The Leijas argue the court erred by granting summary judgment on their claim that Twin City had a good-faith obligation to negotiate a compromise of its lien against the settlement proceeds.

**¶27**      In Arizona, an insurance contract imposes on an insurer the obligation to act in good faith for the benefit of its insured; breach of that duty "may give rise to a claim for the tort of bad faith." *Sobieski v. Am. Standard Ins. Co. of Wis.*, 240 Ariz. 531, 534, ¶ 10 (App. 2016).  The duty of good faith requires a workers' compensation carrier to "give equal consideration" to its own interests and those of the injured worker. *Boy*, 154 Ariz. at 337; *see Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 149, ¶ 32 (App. 2009).  An insurer may be held liable when it "seeks to gain unfair financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237-38, ¶ 20 (2000) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 156 (1986)).  To establish the tort of bad faith, a party must prove an insurer "acted unreasonably and either knew its conduct was unreasonable or acted with such reckless disregard that knowledge of unreasonableness may be imputed to it." *Sobieski*, 240 Ariz. at 534, ¶ 11.

¶28 The Leijas contend that although a workers' compensation carrier may not always be required to compromise its lien, it has a duty to fairly value the lien to begin with, which, under *Aitken*, requires consideration of employer fault. Under *Boy* and *Stout I*, however, we are compelled to conclude that at the time at issue here, absent a fair adjudication of damages and employer comparative fault, a workers' compensation carrier owed an injured worker no duty to compromise or reduce the lien that § 23-1023 grants the carrier. We recognize that it was eight years before the supreme court decided *Aitken* that we held in *Boy* that "no reasonable person would consider [the carrier's] compromise of its lien to be a benefit that [the worker] had the right to expect from the contractual relationship." *Boy*, 154 Ariz. at 337. But we reaffirmed that principle after *Aitken* in *Stout I*, 197 Ariz. at 242-43, ¶ 21. Particularly because we have ruled that the Leijas have a right to a trial by which Twin City's lien may be apportioned, we have no need to reconsider that principle.[3]

### 2. Alleged breach of contract.

¶29 The Leijas also appeal the superior court's grant of Twin City's motion for summary judgment on their claim that Twin City breached a contract by inducing them to settle with the defendants by promising to reevaluate the lien and then refusing to do so. But on appeal, the Leijas do not cite evidence to support that promise, and instead argue simply that the carrier "said it would resolve the issue at a later date and induced [the Leijas] to resolve the case." The evidence in the record is that Twin City consistently warned the Leijas it was unwilling to reduce its lien based on employer comparative fault. For this reason, the superior court did not err in granting summary judgment on this claim.

## C. Motion to Amend.

¶30 Finally, the Leijas appeal the superior court's denial of their motion to amend their counterclaim to add Twin City's parent company, The Hartford, as a party. We review the denial of a motion to amend for an abuse of discretion. *Timmons v. Ross Dress For Less, Inc.*, 234 Ariz. 569, 572, ¶ 17 (App. 2014). "Motions to amend should be granted unless the court finds specific cause, such as futility, to deny the amendment." *Id.*

---

3 For this reason, we need not resolve the Leijas' contention that the superior court erred by denying their motion to compel production of communications between Twin City and its outside counsel concerning whether to agree to compromise the lien.

¶31   The Leijas moved to amend three years into this litigation, nine months after their discovery of The Hartford's purported role in Twin City's consideration of their claim and eight months after the close of discovery. In denying the motion, the superior court cited undue delay and dilatory action on the part of the Leijas, as well as futility. The court also found Twin City is the proper party in this action and ruled that allowing the proposed amendment would prejudice Twin City because it would expand the scope of litigation.

¶32   The superior court did not abuse its discretion in denying the motion to amend. Although mere delay may not justify denial of leave to amend, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Owen v. Superior Court*, 133 Ariz. 75, 79 (1982) (quoting *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). "[P]rejudice is 'the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation.'" *Spitz v. Bache & Co., Inc.*, 122 Ariz. 530, 531 (1979) (quoting *Romo v. Reyes*, 26 Ariz. App. 374, 376 (1976)).

## CONCLUSION

¶33   We reverse the superior court's denial of the Leijas' request for a trial on their damages and the employer's comparative fault and remand for determination of equitable apportionment of Twin City's workers' compensation lien under *Aitken*. We affirm the superior court's entry of summary judgment in favor of Twin City on the Leijas' claims for breach of the covenant of good faith and fair dealing and breach of contract, and the court's denial of the Leijas' motion to amend their counterclaim. We grant the Liejas their costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

